Brent T. Robinson, Esq.
ROBINSON, ANTHON & TRIBE
Attorneys at Law
P.O. Box 396
Rupert, Idaho  83350-0396
Telephone No. (208) 436-4717
Facsimile No. (208) 436-6804
Email Address:  btr@idlawfirm.com
Idaho State Bar No. 1932

Attorneys for Debtor


## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

- - - - - - - - -

| | | |
|---|---|---|
| In Re: | ) | Case No. 10-40017-JDP |
| | ) | (Chapter 11) |
| PARROTT BROADCASTING | ) | |
| LIMITED PARTNERSHIP, | ) | |
| | ) | |
| Debtor. | ) | |

---

## AMENDED DISCLOSURE STATEMENT

---

# I.  INTRODUCTION

## 1.  GENERAL

Parrott Broadcasting Limited Partnership, hereinafter referred to as the debtor, provides this Amended Disclosure Statement to all of their known creditors in order to disclose the information necessary for the creditors to arrive at a reasonably informed decision in exercising their right to vote for acceptance or rejection of the Plan of Reorganization on file with the United States Bankruptcy Court for the District of Idaho (Section 1125 of the United States Bankruptcy Code).  The debtor's address is P.O. Box 11, Hagerman, Idaho 83332.  The debtor is a commercial broadcaster and their radio stations are all located in Hawaii County, Hawaii.

No representations concerning the debtor (particularly as to the value of their property) are authorized by the debtor other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance which are other than as contained herein should not be relied upon by you in arriving at your decision, and such additional representations and inducements should be reported to counsel for the debtor, who in turn shall deliver such information to the Court for such action as may be deemed appropriate.

Under the Plan, the claims of creditors, depending upon the classification of the respective claims (see Plan of Reorganization-Classes of Claims and Interest), will either be paid in full or part; or, have transferred to them property in which they hold a lien.

Since the 7th day of January, 2010, the debtor has operated as debtor-in-possession.  When the plan is confirmed, the debtor will continue to administer the debtor's estate in compliance therewith until such time as the necessary procedures are implemented for disposition of property and distribution of funds.  Thereafter, the debtor will be revested with their property subject to the conditions and requirements of the plan.

Amended Disclosure Statement - 2

2.  FILING OF THE CASE

On the 7th day of January, 2010, the debtor filed its Petition in the United States Bankruptcy Court under Chapter 11 of the United States Bankruptcy Code.  Automatically upon such filing, the debtor became debtor in possession.

2A.  DEFINITIONS

The debtor provides the following definitions for creditors so they can better understand the Plan:

A.  "Petition" shall mean the joint voluntary petition under Chapter 11 filed with this Court on January 7, 2010.

B.  "Case" shall mean the bankruptcy action filed by the debtor for reorganization of the debtor commenced by a joint voluntary petition under Chapter 11 on , now pending in the United States Bankruptcy Court, District of Idaho.

C.  "Filing Date" shall mean the date the debtor filed for relief under Chapter 11 of the United States Bankruptcy Code, or January 7, 2010.

D.  "Effective Date" shall be sixty (60) days after confirmation unless there is a pending appeal regarding confirmation.  If there is a pending appeal, then the effective date shall be the date the appeal is ultimately resolved.

E.  "Date of Distribution" shall be that date selected by the debtor for the initial distribution under the Plan, or if the date of confirmation is after the date selected by the debtor, then the date of distribution shall be sixty (60) days after the date of confirmation, which shall be the effective date of the Plan unless otherwise indicated in the Plan.

F.  "Disbursing Agent" shall mean Scott Parker, who will be duly authorized and appointed upon approval of the Plan.

Amended Disclosure Statement - 3

3.  APPROVAL OF THE DISCLOSURE STATEMENT

This Disclosure Statement, approved by the United States Bankruptcy Court in

accordance with Section 1125 of the Bankruptcy Code, is provided to each creditor whose claim

has been scheduled by the debtor or who has filed a proof of claim against the debtor and to each

interested party of record as of the date of approval of this Disclosure Statement.

The Disclosure Statement is intended to assist creditors and parties in interest in

evaluating the plan and in determining whether to accept the plan.  Under the Bankruptcy Code,

acceptance of the plan may not be solicited unless a copy of this approved Disclosure Statement

is received prior to or concurrently with such solicitation.

4.  CREDITORS ENTITLED TO VOTE ON PLAN

Only votes of classes of claimants (creditors), which are impaired by the plan or

are unsecured are counted in connection with the confirmation of the plan.  Both creditors

holding priority claims and debtor holding an interest will be unaffected by the plan; therefore,

their votes on the plan are not necessary in connection with confirmation of the plan.

5.  MANNER OF VOTING

All claimants entitled to vote on the plan may cast votes for or against the plan by

completing, dating, signing and causing the ballot form accompanied by this Disclosure

Statement to be filed with the Clerk of the United States Bankruptcy Court for the District of

Idaho in accordance with the Court's order.  See *Order Approving Disclosure Statement, Fixing*

*Time for Acceptance or Rejection of Plan [Return of Ballots], and Setting Date for Hearing on*

*Confirmation*.

6.  DETERMINING ACCEPTANCE OF PLAN

In determining the acceptance of the plan, votes will only be counted if submitted

Amended Disclosure Statement - 4

by a claimant whose claim is duly scheduled by the debtor as undisputed, non-contingent and

liquidated, or who, prior to the hearing on confirmation, has filed with the Court a proof of claim

which has not been disallowed or suspended prior to the computation of the vote on the plan. A

class that is unimpaired is deemed to have accepted the plan and solicitation of acceptance is not

required under Section 1126(f).  The ballot form which you receive does not constitute a proof of

claim.  If you are in any way uncertain whether or not your claim has been correctly scheduled,

you should check the debtor's schedules, which are on file in the office of the Clerk of the United

States Bankruptcy Court for the District of Idaho.  Due to the business of the Clerk of the

Bankruptcy Court, it is believed this information will not be given by telephone.

7.  HEARING ON CONFIRMATION OF PLAN

        The Court will set a hearing to determine whether the plan has been accepted by

the requisite number of creditors and whether the other requirements for confirmation of the plan

have been satisfied. Each claimant will receive, either with this Disclosure Statement or

separately, a Notice of Hearing on confirmation of the plan.  (PRESENCE OF CREDITORS AT

THE CONFIRMATION HEARING IS INVITED BUT NOT REQUIRED IN ORDER FOR

THEIR BALLOT TO BE CONSIDERED.)

8.  ACCEPTANCE NECESSARY TO CONFIRM PLAN

        At the scheduled hearing, the Bankruptcy Court must determine, among other

things, whether the plan has been accepted by each impaired class.  Under Bankruptcy Code

Section 1126, an impaired class is deemed to have accepted the plan if at least two-thirds (2/3) in

amount (dollar value) and more than one-half (1/2) in number of the allowed claims of class

members who have voted on the plan, have voted for acceptance of the plan.  Further, unless

there is unanimous acceptance of the plan by an impaired class, the Bankruptcy Court must

Amended Disclosure Statement - 5

determine whether the plan provides class members property of a value that is not less than the

amount such class members would receive or retain if the estate of the debtor was liquidated

under Chapter 7 of the Bankruptcy Code on the effective date of the plan as set forth in Section

1129(a)(7)(A)(ii).

9.  CONFIRMATION OF PLAN WITHOUT NECESSARY ACCEPTANCE

Pursuant to Bankruptcy Code Section 1129(b), the plan may be confirmed even if

it is not accepted by one or all of the impaired classes provided the Bankruptcy Court finds that

the plan does not discriminate unfairly and is fair and equitable to such class or classes.  This

provision requires, among other things, that the claimants (creditors) in the impaired classes must

either receive the full value of the property of their claims or, if they receive less, no class with

junior liquidation priority may receive anything. The debtor may choose to rely upon the provi-

sion commonly known as the "cramdown" to seek confirmation of the plan if it is not accepted by

all classes of creditors. "The test to be applied by the Court is set forth in various paragraphs of

Section 1129(b)... the Court is not permitted to alter the terms of the plan. It must merely decide

whether the plan complies with Section 1129(b).  If so, the plan is confirmed, if not, the plan is

denied confirmation." H.R. 95-595, 95th Cong., 1st Sess., 413 et seq. (1977).

## II.  THE PLAN OF REORGANIZATION

1.  CLASSES OF CLAIMS AND INTEREST AND PAYMENT

It is the Debtor's intention to file an Amended Chapter 11 Plan.  Said Plan shall

set forth a priority-based payment of the allowed claims of creditors following the sale of the

Debtor's radio stations and related assets.  Debtor has conducted negotiations with a number of

Hawaiian Broadcasters and has received tentative offers which shall be subject to approval by the

Court after a separate notice and hearing or in conjunction with the confirmation of the Chapter

Amended Disclosure Statement - 6

11 Plan.  Creditors who shall receive payments in said Plan are as follows:

| **Class** | **Creditor** |
|---|---|
| 1. | **Administrative** |
|  | (a) Attorney's Fees—Robinson, Anthon & Tribe |
|  | (b) Accountant's Fees – Jeff Turner |
|  | (c) Chapter 11 Quarterly Fees – Pursuant to 11 USC 1129(a)(12) |
| 2. | **Section 507 Priority Claims** |
|  | (a) Department of Taxation, Hawaii District |
|  | (b) Internal Revenue Service |
|  | (c) Mitchell J.L. Tam |
| 3. | **Secured Claims** |
|  | (a) Aloha Radio Group, LLC |
|  | (c) JD Spring Creek Ranch, LLC |
|  | (e) Korbel Capital, LLC |
| 4. | **Unsecured Claims** |

The amended plan contemplates an effective reorganization of the debtor's property, treatment of contingent claims, treatment of certain claims upon Court approval and treatment of property returned to owners by Court approval.  This reorganization will commence upon the date of confirmation, the date of distribution and the effective date.  It is contemplated that this Plan will allow secured creditors to be paid in full and will allow unsecured creditors to receive amounts comparable or more than a liquidation of debts and assets for the payment of debts.

Distributions will be made by the disbursing agent, Scott Parker, as provided in the plan.  Unsecured creditors are anticipated to receive approximately 01% payment of the total claimed unsecured debt.

2.  TREATMENT OF CLAIMS

Treatment of the various classes of claims and individual persons or entities

Amended Disclosure Statement - 7

within the class shall be discussed in detail in the plan.  Priority claims will be paid in full;

secured debts will be paid to the extent of their values; unsecured debts will be paid (in a fair and

equitable manner) to the extent the unsecured property of the estate reaches to those creditors or

that the cash flow allows, and other properties will be disbursed and addressed as approved by

the Court.  Treatment of the various claims are discussed in paragraphs 8, 9, 10 and 11 below.

3.  COMPLIANCE WITH 11 U.S.C. 1129(b)

Treatment of various classes and claims comply with Section 1129(a).

Notwithstanding Section 510(a), if all the applicable requirements are met other than with respect

to a class or classes who have accepted the plan or are unimpaired by the plan, the Court, on

request of the proponent of the plan (debtor), shall confirm the plan.  The proponents deem that

the plan does not discriminate unfairly, and is fair and equitable with respect to each class of

claims or interests that is impaired under the plan even though such class may not have accepted

the plan.

4.  RISKS ASSOCIATED WITH THE PLAN

The proposed Plan of Reorganization to be filed with the Court relies on income

generated from the entering into local marketing agreements and /or from the market and sale of

debtor's assets.  There is some risk that the negotiation(s) and ultimate execution of local

marketing agreements and / or the sale of the debtor's assets may be unsuccessful and thereby

pose a risk to completing the Plan of Reorganization.  Additionally, risks associated with funding

and completing the Chapter 11 Plan of Reorganization filed with the Court include recent decline

in demand for radio advertising associated with an economic downtown in the Hawaiian tourism

market.  Finally it is intended the Debtor's Plan of Reorganization may rely on Court approval of

a number of transactions selling debtor's assets;  successful reorganization will rely on such

approval.

### III.  INFORMATION PERTAINING TO DEBTOR CONSIDERED
### RELEVANT TO APPROVAL OF THE PLAN

The debtor presents this plan for confirmation and recommends an affirmative

vote for acceptance of the plan.  This recommendation is based upon information contained in

the following sections of the Disclosure Statement and the belief that when claims are

restructured and coordinated with the liquidation values of the estate, the cash flow will sustain

payments in the reorganized schedules or in the alternative that debtor's liquidation of assets will

provide maximized returns for creditors.  This Disclosure Statement provides adequate infor-

mation in regard to costs of production, gross income and funds available for interest payments

and debt reduction.

The debtor maintains that no creditors have had sufficient information presented

to them prior to this Disclosure Statement; any previously presented plans, disclosure statements

or informational documents, including those presented at any informational meeting regarding

the financial status of the debtor are to be ignored.  Creditors should base decisions to vote for or

against the plan solely upon information provided herein and in the plan itself.

### IV.  HISTORY OF THE DEBTOR

Debtor formed in March of 2007 and subsequently acquired radio station KHWI

in Hilo, HI (FCC Facility ID No. 70379), which was off the air / non-operational. Debtor also

acquired KHBC in Hilo, Hawaii (FCC Facility ID No. 33324). In December of 2007, and upon

the closing of the acquisitions of KHWI and KHBC, debtor resumed the station's broadcast

operations of KHWI and co-located the station with the facilities of KHBC at a physical address

of 688 Kinoole Street, Suite 112, Hilo, Hawaii 96720. At the same time, debtor also acquired the

Amended Disclosure Statement - 9

Construction Permit for a new FM station, licensed to Holualoa, Hawaii (FCC Facility ID No.

164211). Debtor built the Holualoa station, with an on-air date of April 1, 2008 and at a physical

address of 78-128 Ehukai Street, Suite 108, Kailua-Kona, Hawaii 96740. Upon the acquisitions

and construction of each station, debtor continues to manage the programming, sales,

engineering, administration and other operations of the radio stations.  Monies used to acquire

the assets of the debtor were contributed from the partners of Parrott Broadcasting Limited

Partnership.

The debtor's limited partnership is managed by Scott D. Parker, as the general

partner. Other limited partners who are insulated with no management or day to day involvement

include: Judith W. Davis and Robert K. Davis. Mr. Parker, as general partner, has 100% voting

control of the partnership.

## V.  STATEMENT OF FINANCIAL AFFAIRS

### 1.  BOOKS AND RECORDS

The books and records of the debtor have been kept by and are now in the

possession of the debtor.

### 2.  BANK ACCOUNTS

Debtor maintains its Debtor-In-Possession checking account at the Hilo Branch of

First Hawaiian Bank, 1206 Kilauea Avenue, Hawaii 96720.

### 3.  SUITS PENDING

None.

### 4.  INCOME AND EXPENSES PAST THREE (3) YEARS

Attached hereto are copies of the debtor's profit and loss statements for the past

three (3) years and relevant portions of the debtor's income tax returns for 2007, 2008 and 2009,

Amended Disclosure Statement - 10

which show debtor's actual income and expenses for the past three years.

5.  LEASES & CONTRACTS

a. Kaloko Tower Lease: Jim Fakas – entered lease in 2008, requires a monthly payment of $1,577.34 per month.

b. Puu Alala Tower Lease: Island Airwaves, Inc – assumed lease in 2007; requires a monthly payment of $2,822.92 per month (includes electricity costs).

c. Kahaopea Tower Lease (former KHBC-AM Tower): Korbel Capital LLC – entered lease in 2007; requires payment of $600 per month.

d. Hilo Studio/Office Lease: Shigeo Tsuburaya – assumed lease in 2007; requires payment of $2,452.15 per month (includes maintenance and property tax).

e. Kona Studio/Office Lease: Sheraton Keauhou Bay Resort & Spa – entered lease in 2008; requires services "in trade" of $2,000 per month and cash payment of $1,041.66 per month.

f. Wavecomm Solutions: T-1 Utility Phone Line – entered lease in 2008; requires payment of $798.83 per month.

g. Westwood One: CNN News service; assumed contract in 2008; requires one minute per hour of broadcast time in trade.

h. Associated Press: News wire service; contract was never assumed – services have been discontinued.

i.      Triton Digital Media: Internet, website services – entered in 2009; requires one minute per hour of broadcast time in trade.

j.      AT&T Cellular: Cell phone services – entered in 2010; requires payment of

approximately $300 per month.

Assumption and rejection of the above leases shall be treated in an Amended Chapter 11 Plan of

Amended Disclosure Statement - 11

Reorganization and coincide with the acquiring of Local Marketing Agreements and / or the sale of

debtor's assets.

6.  ADMINISTRATIVE EXPENSES

        Robinson Anthon & Tribe, Attorneys at Law, have been paid the sum of $15,000.

Of that amount $2,858.00 was applied to pre-petition fees and costs, and the balance is being

held in trust with the understanding said sum will be applied to post-petition fees and costs

incurred in this case.  Brent T. Robinson of the firm Robinson Anthon & Tribe is handling this

matter at a rate of $190 per hour; Kelly A. Anthon of the firm is working on this matter at a rate

of $150 per hour.  Any fees and costs incurred in excess of the $15,000 being held in trust will be

paid in full within one (1) year after the date of confirmation, but only after Court approval of the

fees has been obtained.

7.  FINANCIAL STATEMENTS

        During the two years immediately preceding the commencement of this case,

debtor's financial statements and tax returns have been prepared by Jennifer Gossert, CPA of

Hilo, HI and Jeff Turner, CPA (Aloha Business Services) of Kailua-Kona, HI.

8.  CREDITORS HAVING PRIORITY CLAIMS

| | |
|---|---|
| Dept. of Taxation, Hawaii District Office | $14,320.45 |
| Internal Revenue Service | $63,334.54 |
| Mitchell J.L. Tam | $868.10 |

If Local Marketing Agreements are acquired and approved, The Department of Taxation, Hawaii

District Office will receive the amount of $14,320.45 which will be paid from revenues

generated by the operation of the debtor's properties and radio stations; in the alternative, said

amounts shall be paid from proceeds resulting from the marketing and sale of debtor's assets.

Amended Disclosure Statement - 12

The amount of $14,320.45 plus interest over the initial five (5) years following confirmation shall be paid unless sooner paid by sale of assets.  The Internal Revenue Service will receive the amount of $63,334.54 ($54,007.42 pursuant to plan) plus interest over the initial five (5) years following confirmation unless paid sooner through the marketing and sale of assets.  Mitchell J.L. Tam will receive the amount of $868.10 in one payment on or before January 1, 2011.

9.  CREDITORS HAVING UNSECURED CLAIMS WITHOUT PRIORITY, DISPUTED

| | |
|---|---|
| ASCAP | $1,375.09 |
| ASCAP | $6,944.07 |
| ASCAP | $13,138.74 |
| BMI Radio | $1,826.26 |
| BMI Radio | $6,498.35 |
| Broadcast Engineering Service | $6,655.82 |
| Communication Systems Specialists | $2,000.00 |
| FirstComp Insurance | $1,218.00 |
| Hilo Broadcasting, LLC | $156,000.00 |
| SESAC | $1,586.15 |
| Wagner Choi & Verbrugge | $1,000.00 |
| Westwood One Company | $6,468.00 |

Pursuant to Notice by the U.S. Bankruptcy Court, District of Idaho, Dated January 8, 2010 of the Court's Deadline to file a Proof of Claim, proof of claims must have been received by the bankruptcy clerk's office for all creditors (except any government unit) by May 6, 2010.  It is debtor's position that the following creditors, whose claims having been listed as disputed and/ or unliquidated and having failed to timely file a Proof of Claim in this case are, therefore no longer creditors to the debtor.[1] Accordingly, the following parties listed below shall receive no distribution:

     a.   Broadcast Engineering Service

---

[1] *See:*  11 U.S.C. Section 1111(a), FRBP 3003(b). A creditor must file a proof of claim if it is listed as disputed, unliquidated, or contingent by the filing deadline date, 11 U.S.C. Section 1111(a), FRBP 3003 (c2).

      b.  Communications System Specialists

      c.  Hilo Broadcasting, LLC

      d.  Wagner Choi & Verbrugge

      e.  Westwood One Company

Creditors listed as disputed, unsecured claims shall not be included in the unsecured class of the

Chapter 11 Plan of Reorganization and shall receive no distribution.

10.  UNSECURED, UNCONTESTED CLAIMS

| | |
|---|---|
| Associated Press Broadcasting Service | $1,664.87 |
| Bank of America | $5,744.45 |
| Cohn and Marks LLP | $11,374.76 |
| FIA Card Services | $15,311.54 |
| Hawaii Electric Light Co, Inc. | $7,573.65 |
| Hawaii Electric Light Co, Inc. | $2,734.73 |
| Hawaii Electric Light Co, Inc. | $5,118.34 |
| Hawaiian Telcom | $2,299.32 |
| Hawaiian Telcom | $4,977.94 |
| Hawaiian Telcom | $833.72 |
| Hawaiian Telcom | $2.91 |
| Hawaiian Telcom | $782.18 |
| Island Airwaves, Inc. | $9,574.95 |
| Jim Fakas | $6,898.41 |
| Korbel Capital, LLC | $21,515.00 |
| Marquee Broadcasting, Inc. | $230,671.88 |
| Mike Blackenbecker | $265.00 |
| Pacific Lightnet, Inc. | $1,748.72 |
| Sheraton Keauhou Bay Resort & Spa | $10,909.38 |
| Shigeo Tsuburaya | $9,949.38 |

The above-named creditors shall receive a pro-rata share of $15,756.72 over the initial

five (5) years following confirmation upon the execution of local marketing agreements;

alternatively, said creditors shall receive a pro-rata share of any and all amounts received from

the marketing and sale of debtor's assets after payment of all administrative, secured, and

unsecured priority claims.

## 11. SECURED CLAIMS

| | |
|---|---|
| Aloha Radio Group, LLC | $244,838.58 |
| JD Spring Creek Ranch, LLC | $106,000.00 |
| Korbel Capital, LLC | $109,488.89 |

The secured claim of Aloha Radio Group, LLC is a loan for the acquisition of radio station KHBC FM which has a judgment lien.  Aloha Radio Group will receive the total amount of $244,838.58 plus interest over the initial seven (7) years following confirmation.

The secured claim of JD Spring Creek Ranch, LLC is a loan secured by all assets of Parrott Broadcasting Limited Partnership (KHBC, KIPA, KHWI).  JD Spring Creek Ranch, LLC will receive the total amount of $106,000.00 plus interest over the initial ten (10) years following confirmation.  The members of JD Spring Creek Ranch, LLC are Judith Morrison and Robert Davis.  Judith is the mother of General Partner Scott Parker and Robert is the half brother of General Partner Scott Parker.

The secured claim of Korbel Capital, LLC is a loan secured by all assets of Parrott Broadcasting Limited Partnership (KHBC, KIPA, KHWI).  Korbel Capital, LLC will receive the total amount of $109,488.89 plus interest over the initial ten (10) years following confirmation. The member of Korbel Capital, LLC are Judith Morrison and Robert Davis.  Judith is the mother of General Partner Scott Parker and Robert is the half brother of General Partner Scott Parker.

It ultimately may be determined, however, that the claims of said creditors are partly secured and partly unsecured, or may be discharged in part or in full.

## 12. CREDITORS HOLDING CLAIMS THAT ARE UNDERSECURED

The debtor acknowledges the creditors holding security and accepts the claims as described in the following descriptions.  These claims, however, may be greater than the value of

the property. Accordingly, these claims are treated under Section 506 of the Bankruptcy Code,

which reads as follows:

>    A.  An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under Section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interests in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditors' interest or the amount so subject to setoff is less than the amount of such allowed claim.  Such value shall be determined in light of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

The debtor accepts the secured liens to the extent of the values of the properties.

Liens that are greater than the value of the property shall be treated as unsecured in the amount

that does not reach to the value of the property.  Because these property values are less than the

claims, no interest shall accrue from the date of filing on either the secured or unsecured portions

of the claims.

## 13.  INCONSEQUENTIAL OR BURDENSOME PROPERTY

None.

## 14. EXEMPT PROPERTY

None.

## 15. LIQUIDATION ANALYSIS

The liquidation analysis below is based on estimations derived from the debtor's attempts

to sell the property on the fair market and current values of real property assets have been derived

based on debtor's work in attempting to market the assets with real estate experts in the Hawaiian

market.  The values are represented in the debtor's schedules and in the following liquidation

analysis represent the fair market value of all assets of the debtor.  A twenty percent (20%)

Amended Disclosure Statement - 16

liquidation fee and expenses contemplates was derived from estimates of the costs associated

with the sale of potential auctioneer fees, realtor fees, and marketing costs in the Hawaiian

market. Twenty percent (20%) is considered to be the maximum cost for such liquidation fees

and expenses. Reduction in the amount of liquidation fees and expenses by as much as ten

percent (10%) would still result in a negative net amount of proceeds available to unsecured

creditors.

<u>Debtor's Assets and Estimated Proceeds if Liquidated</u>

| | |
|---|---:|
| FCC Facility ID No. 33324 – Sale of Property & Equipment | *$50,000* |
| | |
| Less 20% Liquidation Fees & Expenses | $10,000 |
| Secured Creditor – Korbel Capital, LLC | $109,489 |
| Secured Creditor – JD Spring Creek Ranch LLC | $106,000 |
| Priority Claim – Internal Revenue Service | $54,007 |
| Priority Claim – Dept. of Taxation, District of Hawaii | $12,266 |
| Priority Claim – Mitch J.L. Tam | $868 |
| | |
| Net Gain (Loss) | ($222,630) |
| | |
| FCC Facility ID No. 7037 – Sale of Property & Equipment | *$250,000* |
| | |
| Less 20% Liquidation Fees & Expenses | $50,000 |
| Secured Creditor – Aloha Radio Group, LLC | $244,839 |
| Secured Creditor – Korbel Capital, LLC | $109,489 |
| Secured Creditor – JD Spring Creek Ranch LLC | $106,000 |
| Priority Claim – Internal Revenue Service | $54,007 |
| Priority Claim – Dept. of Taxation, District of Hawaii | $12,266 |
| Priority Claim – Mitch J.L. Tam | $868 |
| | |
| Net Gain (Loss) | ($327,469) |
| | |
| FCC Facility ID No. 164211 – Sale of Property & Equipment | *$250,000* |
| | |
| Less 20% Liquidation Fees & Expenses | $50,000 |
| Secured Creditor – Korbel Capital, LLC | $109,489 |
| Secured Creditor – JD Spring Creek Ranch LLC | $106,000 |
| Priority Claim – Internal Revenue Service | $54,007 |
| Priority Claim – Dept. of Taxation, District of Hawaii | $12,266 |
| Priority Claim – Mitch J.L. Tam | $868 |

Net Gain (Loss)                                                    ($82,630)

Consolidated – Debtor's Assets and Estimated Proceeds if Liquidated

FCC Facility ID No. 33324 – Sale of Property & Equipment          *$50,000*
FCC Facility ID No. 70379 – Sale of Property & Equipment          *$250,000*
FCC Facility ID No. 164211  Property & Equipment                  *$250,000*

    Less Liquidation Fees & Expenses of 20%               ($110,000)

    TOTAL                                                  $440,000

Consolidated – Distribution to Secured and or Priority Claims if Liquidated:

| | |
|---|---|
| Aloha Radio Group | $244,839 |
| Korbel Capital, LLC | $109,489 |
| JD Spring Creek Ranch, LLC | $106,000 |
| Internal Revenue Service | $54,007 |
| Dept. of Taxation, District of Hawaii | $12,266 |
| Mitch J.L. Tam | $868 |

    Total   $527,469

Net Gain (Loss) Proceeds from Liquidation        Total   ($87,469)
======

## VI.  EXPENSES AND INCOME INFORMATION

Debtor's actual income and expenses for the past three years are shown on the attached profit and loss statements and tax returns.  Debtor's projected income and expenses are shown on the attached budget/cash flow statement.

## 1.  FUNDS FOR OPERATION/MEANS OF IMPLEMENTATION

Funds for operation will be generated from net cash flow under the reorganization plan.  More particularly, debtor has negotiated an agreement to merge certain radio station businesses and enter into a Local Marketing Agreement with another Hawaii broadcast company. The Hawaiian broadcasters with whom the Local Marketing Agreement and / or sale of the debtor's assets proposed herein are all reputable broadcasters with multiple-group radio stations

Amended Disclosure Statement - 18

in the Hawaiian market and have sufficient experience and expertise in the industry to

successfully assume control of the stations as proposed and the ability to generate the anticipated

net proceeds necessary to fund the debtor's Chapter 11 Plan of Reorganization.  This transaction,

once approved by the Court, will produce net proceeds of $10,000 or more per month and be

applied to pay general and priority secured and unsecured debt while eliminating certain

operating expenses.  Debtor's projected income and expenses as shown on the attached budget

and cash flow statement are consistent with prior years sales.  In 2008 debtor's sales reached

approximately $55,000.00 per month in November without the implementation of a Local

Marketing Agreement that is proposed.  As such, the Local Marketing Agreement is a viable

means of increasing the amount of net proceeds available to fund debtor's Chapter 11 Plan of

Reorganization.

By entering into the Local Marketing Agreement described above, debtor will be

able to effectuate a reorganization of its business sufficient to implement the provisions of the

Chapter 11 Plan which has been filed with the Court.  The Local Marketing Agreement will

provide the debtor net proceeds of $10,000.00 or more per month by reducing expenditures that

have been required in recent years and eliminating net losses.  The debtor's projected income and

expenses as shown on the budget and cash flow statement attached hereto demonstrate the means

by which the proposed plan provisions filed with the Court will be implemented.

## 2.  NATURE OF OPERATIONS AND REASONS FOR FILING BANKRUPTCY

Debtor operates a group of commercial radio stations on the Big Island of Hawaii.

Debtor's main source of revenue is in the sale of advertising broadcast time. Due to a declining

advertising market and poor economic conditions as a whole, debtor was forced to file for

Amended Disclosure Statement - 19

bankruptcy protection.

3.  COMPENSATION TO PARTNERS OF PARROTT BROADCASTING LIMITED
PARTNERSHIP

Partners of the debtor, Parrott Broadcasting Limited Partnership, have not received

compensation.   Although the General Partner is entitled to receive a salary under the Limited

Partnership Agreement of the debtor, the General Partner has not received a salary from the

partnership.  The forfeiture of this salary was voluntary on behalf of General Partner Scott Parker

due to the financial difficulty the partnership encountered pre-petition.

DATED this 1st day of October, 2010.


  /s/   Scott Parker
Scott Parker