# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

---

| | |
|---|---|
| **In Re:** | **Bankruptcy Case** |
| **PARROTT BROADCASTING LIMITED PARTNERSHIP,** | **10-40017-JDP** |
| Debtor. | |

---

## MEMORANDUM OF DECISION

---

**Appearances:**

Brett Cahoon, RACINE OLSON NYE BUDGE & BAILEY, Pocatello, Idaho, for chapter 7 Trustee Gary L. Rainsdon.

### *Introduction*

Chapter 7[1] trustee, Gary L. Rainsdon ("Trustee"), objected to the amended proof of claim ("POC") filed in this case as Claims Reg. No. 26-3

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 1

by Frederick H.K. Baker, Jr. ("Baker").  Dkt. No. 223 .  The objection was

argued at a hearing before the Court on March 18, 2013, and after

supplemental briefing by Trustee was filed, Dkt. No. 240, the issues were

taken under advisement.² The Court has considered the briefs, arguments,

and applicable law.  This Memorandum resolves Trustee's objection.  Fed.

R. Bankr. P. 7052; 9014.

*Facts*

On February 25, 2003, Kani Communications, Inc. ("Kani") entered

---

² This contest has taken a somewhat tortured procedural path.  An original proof of claim was filed on June 15, 2010, and was amended on May 31, 2011. Trustee objected to allowance of that amended claim.  Dkt. No. 200.  Assuming no timely response to Trustee's objection was filed, the Court entered an order disallowing the claim.  Dkt. No. 203.  However, after it was discovered that a timely response to the objection had indeed been filed, Dkt. No. 205, Trustee filed a motion to rescind the order disallowing the claim, Dkt. No. 208; that motion was granted, Dkt. No. 211.  Shortly thereafter, Baker filed a motion to reconsider the order disallowing the claim.  Dkt. No. 212. Presumably, the order rescinding the disallowance of the claim and Baker's motion to reconsider "passed in the mail."  Because, as things turned out, the Court's rescinding order effectively granted Baker the relief requested in his motion to reconsider, the Court will deem Baker's motion to reconsider moot.  This places the litigants on the same footing as existed prior the entry of the order disallowing the claim: the creditor has filed a proof of claim to which Trustee has objected.  The Court will therefore consider the merits of Trustee's objection and determine the whether creditor's claim should be allowed.

MEMORANDUM OF DECISION – 2

into a Contract Usage Agreement for Permit Area ("Lease Agreement") with Hilo Broadcasting, LLC ("Hilo").  Att. to Claims Reg. No. 26-1.  Baker is the president and chief executive officer of Kani.  Hilo had previously purchased the license for radio station KAHU from Kani, and already owned the transmission tower ("Tower") located on certain real property, the use of which was restricted somewhat by the Hawaiian Homes Commission Act of 1920 ("Property").[3]  *Id*.  Hilo also owned the license for radio station KHBC.  Dkt. No. 233, Exh. A.  The Lease Agreement granted Hilo the right to use a specified portion of the Property to locate and operate the Tower for radio broadcasting purposes.  *Id*.  The term of the Lease Agreement was for eight years, commencing on March 1, 2003, and concluding February 28, 2011.[4]  *Id*. at ¶ 2(a).  Under the Lease Agreement,

---

[3] On August 15, 2001, Baker had entered into an agreement with Wendell J. Kaehuaea, to use a portion of certain real property pursuant to the Hawaiian Homes Commission Act of 1920.  Claims Reg. 26-2, Exh. A.  It is the Court's understanding that the Act permits certain Hawaiian real property to be owned/leased only by or to native Hawaiians.

[4] The Lease Agreement was renewed on March 24, 2011 for a period of ten years.  Claims Reg. 26-2, Exh. B.

MEMORANDUM OF DECISION – 3

rent was to be paid by Hilo to Kani in the amount of $850 per month for the first five years, and $1,250 per month for the remaining three years of the contract term. *Id.* at ¶ 3(a). The Lease Agreement provided that Hilo "can not in any way assign this Contract Usage Agreement or the Permit Area, or any part of their interest thereof." *Id*. at ¶ 12. The Lease Agreement was signed by Baker as the president of Kani, and Hugh E. Gordon, the president of Hilo. Attachment to Claims Reg. No. 26-1.

On September 13, 2007, Parrott Broadcasting, LP ("Debtor") entered into an Asset Purchase Agreement ("APA") with Hilo, by which Debtor acquired the assets of radio station KHBC, including the Tower,[5] from Hilo for $450,000. Dkt. No. 233, Exh. A. The APA also provided that Debtor would assume and accept an assignment of Hilo's duties and rights under the Lease Agreement, despite the provision in the Lease Agreement expressly prohibiting its assignment. *Id.* at ¶ 2.01(c).

In November 2007, Hilo and Debtor entered into a Post-Closing

---

[5] During this bankruptcy case, the Court approved Trustee's sale of the license for KHBC and two additional radio stations on April 2, 2012. Dkt. No. 182.

MEMORANDUM OF DECISION – 4

Agreement for Use of Tower Site and for Payment of Tower Site Rent ("Post-Closing Agmt."). Att. to Claims Reg. No. 27-2. The Post-Closing Agmt. provides that Hilo will retain the Lease Agreement in its name during the remainder of its term, but Hilo will provide Debtor with all the benefits of the Lease Agreement, namely, access to the Tower site. *Id*. at ¶ 1. In exchange, Debtor agreed to:

> accept and agree to do all things necessary to fulfill the obligations of [Hilo] under the [Lease Agreement], including the reimbursement of [Hilo] for all rent obligations of [Hilo] under the [Lease Agreement.] Specifically, [Debtor] will pay <u>to [Hilo]</u>, on the first day of each and every month during the remainder of the term of the [Lease Agreement] and any renewal term, any and all rent and other remuneration, funds, and expenses due for that month to [Kani]. [Hilo] will immediately thereafter remit such rent, remuneration, funds and amounts due to [Kani] at the proper time pursuant to the terms of the [Lease Agreement.]

*Id*. at ¶ 2 (emphasis in original).

On January 7, 2010, Debtor filed a chapter 11 petition. Dkt. No. 1. The case was converted to a chapter 7 case on February 9, 2011. Dkt. Nos.

MEMORANDUM OF DECISION – 5

113, 114. Kani's original proof of claim was filed on June 15, 2010, and in it, the creditor asserts that from "March 2009 through November 2009, KANI continued to receive on time monthly usage payments for the Property. In December 2009, KANI received the monthly payment for the Property late." Claims Reg. No. 26-1, ¶ 6. The amended POC, at issue here, was filed on October 12, 2012; it asserts $43,696.95 is due from Debtor for postpetition rent payments and late charges under the Lease Agreement accruing from January 2010 through February 2011. Claims Reg. No. 26-3. Trustee objected to the amended POC. Dkt. No. 223. Baker filed a response to the objection. Dkt. No. 233.

*Analysis and Disposition*

A timely filed proof of claim is deemed allowed, unless a party in interest objects, and constitutes prima facie evidence of the validity and amount of the claim. § 502(a); Rule 3001(f). However, if an objection to a proof of claim is made, the Court must determine the amount of the claim as of the date of the petition, and "shall allow such claim . . . except to the extent that — (1) such claim is unenforceable against the debtor and

MEMORANDUM OF DECISION – 6

property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." § 502(b)(1). As the objector, Trustee bears the burden to overcome the prima facie validity of Kani's claim. If he does so, then the burden ultimately rests on Kani to demonstrate that the claim should be allowed. *In re Schweizer*, 354 B.R. 272, 279-80 (Bankr. D. Idaho 2006) (citing *In re Pugh*, 157 B.R. 898, 901 (9th Cir. BAP 1993)).

Trustee objects to the POC on three grounds. First, Trustee argues that Kani is a corporate entity and thus can not appear or respond to his objection without counsel, and therefore, the Court should disregard any response to the objection filed by Baker, who is and has been representing Kani pro se. Trustee also contends that the claim is unenforceable because Debtor was not a party to the Lease Agreement, and Kani has no right to recover unpaid rents from Debtor. Finally, Trustee contends that the assignment of the Lease Agreement from Hilo to Debtor was invalid and ineffective and Kani therefore has no right to recover rent from Debtor. The Court considers each of these arguments in turn.

MEMORANDUM OF DECISION – 7

### A.  Baker as Creditor – Kani's Need for Counsel

Trustee alleges first that Kani, not Baker, is the actual creditor in this case, and as a corporation, Kani must be represented in these proceedings by counsel.  Therefore, Trustee urges, the Court should disregard any opposition to Trustee's objection.  Trustee's contention has merit.

Baker's reply to Trustee's objection to the POC begins, "COMES NOW, FREDERICK H.K. BAKER, JR. ("BAKER"), in his own person and proceeds Pro Se.  Baker herein declares that he is President/CEO of KANI Communications, Inc."  Dkt. No. 233 (emphasis in original).  The obvious import of this statement is that Baker acknowledges that he is appearing, not on his own behalf, but in his status as President/CEO, to represent Kani's corporate interests in this case.  Such is not a permissible practice under the law or rules of this Court.

"It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."  *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993); *Licht v. Am. West Airlines*, 40 F.3d 1058, 1059 (9th

MEMORANDUM OF DECISION – 8

Cir. 1994) ("Corporations and other unincorporated associations must appear in court through an attorney"). This is also the rule of the bankruptcy courts in the District of Idaho. Local Bankruptcy Rule 7010.1(e)(3) provides "[w]henever a corporation, partnership or other entity desires or is required to make an appearance in this court, only an attorney of the bar of this court or an attorney permitted to practice under these rules shall make the appearance." *See In re Kearns*, 10.1 IBCR 331, 331 n.2 (Bankr. D. Idaho 2010) (vice president not permitted to appear on behalf of corporation, even though he was an attorney licensed to practice in a state other than Idaho).

There is no evidence in the record that the creditor's claim has been assigned from Kani to Baker, despite the fact that the first two versions of the POC were filed by Kani, and the latest was filed by Baker individually. Thus, it appears Baker filed the POC, as well as the response to Trustee's objection, pro se. This is not a problem as regards the filing of the POC, as LBR 9010.1(e)(5)(A) provides that a creditor may prepare, sign, and file a proof of claim. In contrast, though, the filing of a pleading, in this case, the

MEMORANDUM OF DECISION – 9

response to Trustee's objection, does constitute an "appearance" for the purpose of the rule, and is thus prohibited. One remedy for discouraging this prohibited practice is to strike the pleadings filed pro se by a corporation. *See Advantage Healthplan, Inc. v. Potter*, 391 B.R. 521, 538 (D.D.C. 2008); *Terry v. Sparrow*, 328 B.R. 442, 446 (M.D.N.C. 2005); *Microsoft Corp. v. Computer Serv. & Repair, Inc.*, 312 F.Supp.2d 779, 782 (E.D.N.C. 2004). As such, it is within the Court's power to simply strike the pleadings Baker filed on behalf of Kani and sustain Trustee's objection by default.

As the amended POC lists Baker as the creditor, he might contend that Kani had assigned the claim to him individually. But Baker has not complied with the rules to establish his rights as an assignee of the claim. Rule 3001(e)(2) governs transfers of creditor claims after a proof of claim has been filed, and requires that, if a claim is transferred, "evidence of the transfer shall be filed by the transferee," whereupon the Clerk then gives notice of the filing to the transferor, who may then object. Baker has not satisfied the requirements of this Rule.

MEMORANDUM OF DECISION – 10

Furthermore, even if Baker had attached some sort of assignment to the latest POC, the Court would scrutinize the transfer carefully:

> There is significant authority from other jurisdictions demonstrating that courts will look past the legal title to determine whether a pro se purported assignee is circumventing rules and statutes requiring that corporations be represented by counsel in legal proceedings. *See, e.g., Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir. 1997) ("appearance pro se denotes (in law latin) appearance for one's self; so that a person ordinarily may not appear pro se in the cause of another person or entity"; lay person may not assert pro se a claim assigned to litigant by the corporation); *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) (assignment of corporate claim to corporate officer did not obviate requirement that corporation be represented by counsel); *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 23 (2d Cir. 1983) (noting that federal courts have disapproved "any circumvention of the rule [of corporate representation by counsel] by the procedural device of an assignment of the corporation's claims to the lay individual"); *Jones v. Dacosta*, 930 F.Supp. 223, 225 (D.Md. 1996) (corporation may not assign interest in case to individual in order to permit individual to litigate claim pro se); *Capital Group, Inc. v. Gaston & Snow*, 768 F.Supp. 264, 265–66 (E.D.Wis. 1991) (same holding); *Roberts v. State Dep't of Revenue*, 162 P.3d 1214,

MEMORANDUM OF DECISION – 11

> 1220 (Alaska 2007) (business's assignment of claim to owner was invalid attempt to circumvent statutory requirement that business be represented by an attorney); *Driscoll v. T.R. White Co., Inc.*, 805 N.E.2d 482 (Mass. 2004) (assignment of corporations claims by corporation to sole shareholder could not authorize non-attorney shareholder to represent corporation in court). *But see Traktman v. City of New York*, 182 A.D.2d 814, 582 N.Y.S.2d 808 (1992) (corporation's assignment of claim to its employee did not violate statutes prohibiting corporation from appearing pro se ).

*In re Thomas*, 387 B.R. 808, 815-16 (D. Colo. 2008).

On this record, it appears the claim belongs to Kani, not Baker. Kani, as a corporate entity, must be represented by counsel and Baker may not appear to defend against Trustee's objection. As a result, the Court could strike Baker's response to the Trustee's objection to the claim. Nevertheless, because Kani could request reconsideration of any order disallowing the claim by default under Rule 3008, should the Court strike the pleadings filed by Baker, for the sake of economy and expediency, the Court deems it appropriate in this case to consider the merits urged by Baker in his response to Trustee's objection.

MEMORANDUM OF DECISION – 12

B. Recovery Under the Lease Agreement

Recall, Kani's claim stems from its status as the landlord under a lease of the real property in Hilo, Hawaii, upon which the Tower and other broadcast building and equipment were located. In considering Debtor's liability, if any, under the Lease Agreement, the Court will utilize Hawaiian contract and real property law. *Johnson v. Righetti (In re Johnson)*, 756 F.2d 738, 741 (9th Cir. 1985) ("In proof of claim litigation under 11 U.S.C. § 502(b)(1), the validity of the claim is determined under state law."); *In re Ricks*, 10.4 IBCR 104, 105 (Bankr. D. Idaho 2010). As the relevant documents and contracts implicated here were executed, and the parties' obligations were to be performed, in Hawaii, and because the subject matter of the contracts (the radio station, broadcast tower, etc.) were all located in Hawaii, the Court determines that Hawaii state law applies.

*1. Debtor is Not a Party to the Lease Agreement*

Trustee first asserts that because Debtor is not a party to the Lease Agreement, Kani is not entitled to any distribution on its claim in Debtor's

MEMORANDUM OF DECISION – 13

bankruptcy case. It is well-established that a claim can not be allowed if it is unenforceable under nonbankruptcy law. *In re G.I. Indus., Inc.*, 204 F.3d 1276, 1281 (9th Cir. 2000) (quoting *Diamant v. Kasparian (In re Southern Cal. Plastics, Inc.)*, 165 F.3d 1243, 1247 (9th Cir. 1999)). Kani contends that Debtor is liable on the Lease Agreement, because it assumed that contract as part of the APA with Hilo. The Court is not convinced.

The Lease Agreement specifically provides that "[Hilo] can not in any way assign this [Lease Agreement] or the Permit Area, or any part of their interest thereof." Att. to Claims Reg. 26-1, ¶ 12. Under Hawaiian law, a promise by a lessee not to assign the lease or sublet the premises is given effect, but is subject to strict construction. *Food Pantry, Ltd. v. Waikiki Bus. Plaza, Inc.*, 575 P.2d 869, 874 (Haw. 1978). The non-assignment clause in the Lease Agreement in this case is quite specific and clear in providing that Hilo has no assignment rights of any kind. However, under the APA executed by Debtor and Hilo, Debtor committed to "assume and accept the assignment of the ground lease with KANI Communications, Inc., ending the 28th day of February 2011." Dkt. No. 233, Exh. A at ¶ 2.01(c).

MEMORANDUM OF DECISION – 14

To avoid the non-assignment clause under Hilo's lease with Kani, the APA required Kani's consent to the assignment of the Lease Agreement. In other words, as a condition precedent to Debtor's obligations under the APA, Hilo must "have obtained and shall have delivered to [Debtor] all third-party consents that may be required for assignment of Contracts to be assumed by [Debtor] listed on Schedule 2.01(c) without any condition materially adverse to [Debtor]." *Id.* at ¶ 7.09.

    While the record is unclear, the Court speculates that Kani perhaps either refused to give consent, or was never asked by Hilo or Debtor to do so. The Court's assumption is premised upon the terms of the Post-Closing Agmt., executed in November 2007, approximately one month after the APA was signed. It recites that it is "impractical to obtain an assignment of the [Lease Agreement]," and provides that Hilo will retain the Lease Agreement in its own name, but make the Tower site available to Debtor. *Id.* at ¶ 1. The Post-Closing Agmt. further requires Debtor to pay the rent payments to Hilo, who promises in turn to remit them to Kani under the terms of the Lease Agreement. *Id*. at ¶ 2. Finally, the agreement

MEMORANDUM OF DECISION – 15

requires that "any and all communications with [Kani] will be conducted by [Hilo] exclusively." *Id*. at ¶ 3. Reading between the lines, by this contract, it is almost as though Hilo and Debtor intended to keep the terms of the APA from discovery by Kani. Regardless, the Post-Closing Agmt. effectively insulates Kani from the Hilo-Debtor APA and prevents any assertion that Debtor was in privity with Kani as a result of the APA.

Baker, in the POC, acknowledges the existence of both the APA, and its assignment/assumption of the Lease Agreement. In fact, he notes that the Lease Agreement is an executory contract, *see* Claims Reg. No. 26-3, and seeks to hold Debtor to the provision in the Lease Agreement which expressly requires prior written consent of Kani to allow other FCC licensees to utilize the Tower. In short, Kani obviously acquired knowledge of the APA at some point, and now seeks to use it as the basis for its claim in Debtor's bankruptcy.

While not an issue here, there appears to be little question that Hilo is still liable to Kani under the Lease Agreement. The general rule is that "unless otherwise expressly or impliedly agreed, the original lessee

MEMORANDUM OF DECISION – 16

remains liable on privity of contract to the lessor after an assignment even though the assignment is assented to by the landlord." *Broida v. Hayashi*, 464 P.2d 285, 287 (Haw. 1970). Moreover, "[w]ithout an affirmative acknowledgment to the contrary by the lessor, the lessee is not relieved of his contractual obligations under the lease even when the assignee of the lessee expressly assumes obligations of the lessee owing to the primary lessor under the lease." *Id*. at 288. Furthermore, it is also clear that Debtor is liable to Hilo under the Lease Agreement due to the terms of the APA and Post-Closing Agmt.: "An assignee who covenants with the lessee to perform all the obligations in the original lease is liable to the lessee on privity of contract." *Id*.

However, on this record, the Court concludes that Debtor is not directly liable for the unpaid rent to Kani. Thus, Trustee's objection to Kani's POC on this basis is well-taken.

2. *Executory Nature of Lease Agreement*

Even if Debtor were somehow liable to Kani under the Lease Agreement, the filing of Debtor's bankruptcy petition in this case adds a

MEMORANDUM OF DECISION – 17

new wrinkle.  Section 365(d)(4) provides that an unexpired lease of nonresidential real property must be assumed within 120 days after the petition date or by the plan confirmation date, whichever occurs first.  If the unexpired lease is not assumed, it will be deemed rejected. § 365(d)(4); *In re G.I. Indus., Inc.*, 204 F.3d at 1281; *In re TSB, Inc.*, 302 B.R. 84, 88 (Bankr. D. Idaho 2003), 03.4 IBCR 220, 221 (Bankr. D. Idaho 2003).  Such rejection constitutes a breach of the lease "immediately before the date of the filing of the petition," and the unexpired lease is removed from the bankruptcy estate.[6]  § 365(g)(1); *Id*. (citing *First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.)*, 439 F.3d 558, 563 (9th Cir. 2006)).

    Here, Debtor's case remained in chapter 11 for over one year before the case converted to chapter 7.  *See* Dkt. Nos. 1, 113, 114.  Thus, the 120-

---

[6] Under § 365(d)(3), if Debtor was obligated to perform under the terms of the Lease Agreement, then that obligation continued during the first 60 days of the chapter 11 case, and Kani would be entitled to an administrative expense claim for the full amount of rent called for under the terms of the Lease Agreement during that period.  *In re TSB, Inc.*, 302 B.R. at 87-88; 03.4 IBCR at 221.  However, not only has Kani not proven that Debtor is liable to it under the Lease Agreement, but Kani also has not filed any sort of administrative claim in the case.  The deadline to file administrative claims passed on May 6, 2010.  LBR 3003.1(a); Dkt. No. 7.

MEMORANDUM OF DECISION – 18

day deadline to assume or reject the nonresidential real property lease passed. The conversion to chapter 7 did not restart the clock. *In re TSB, Inc.*, 302 B.R. at 88. Assuming Debtor was a party to the Lease Agreement, the agreement would have been deemed rejected and the contract breached just prior to petition day, giving rise to a prepetition claim. As such, while Kani might be entitled to unpaid rent for the remainder of the lease term, it may not recover unpaid post-petition rent or late charges based on the Lease Agreement. Thus, Kani's claim for $19,880 in rent payments and $23,816.95 for "late charges" dating from January 2010 through February 2011, after the bankruptcy filing, is clearly impermissible and Trustee's objection to that portion of the claim is also sustained.

*Conclusion*

Trustee's objection to Kani's POC will be sustained, and the claim will be disallowed. Absent proof to the contrary, Kani, not Baker, is the creditor, and Baker could not respond on Kani's behalf to Trustee's objection to the POC. As a result, Trustee's objection to the claim may be

MEMORANDUM OF DECISION – 19

sustained by default. Second, because Hilo was expressly prohibited from assigning the lease, and Kani did not consent to any assignment to Debtor, no privity of contract exists between Kani and Debtor sufficient to obligate Debtor for lease payments. Finally, even assuming Kani could assert a claim under the Lease Agreement, any claims for post-petition rent and late charges is improper absent assumption of the lease during the bankruptcy case.

A separate order will be entered.

Dated: May 13, 2013

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 20