# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| In Re: | |
| | |
| **PARROTT BROADCASTING** | **Bankruptcy Case** |
| **LIMITED PARTNERSHIP,** | **No. 10-40017-JDP** |
| | |
| **Debtor.** | |

_____

# MEMORANDUM OF DECISION

_____

**Appearances:**

Daniel C. Green and Brett R. Cahoon, RACINE OLSON NYE
BUDGE & BAILEY, Pocatello, Idaho, for chapter 7 trustee Gary L.
Rainsdon.

Robert J. Maynes, MAYNES TAGGART, PLLC, Idaho Falls, Idaho,
for chapter 7 trustee R. Sam Hopkins.

## *Introduction*

In this unusual encounter, a chapter 7[1] trustee objected to a proof of

_____

[1]  Unless otherwise indicated, all chapter and section references are to the
Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal
Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule"
references are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION – 1

claim filed in this case by another chapter 7 trustee. The Court conducted

an evidentiary hearing on the claim objection and related matters on May

7, 2013. Dkt. No. 253. The parties filed post-hearing briefs. Dkt. Nos. 257-

260. This Memorandum constitutes the Court's findings of facts and

conclusions of law, and resolves the objection. Fed. R. Bankr. P. 7052; 9014.

### *Findings of Fact*

In 2007, Scott Daryl Parker ("Parker") formed Parrott Broadcasting,

L.P. ("Parrott") along with his mother and brother.[2] Parker served as

Parrott's general manager which, according to the Limited Partnership

Agreement ("Partnership Agreement"), entitled him to receive a monthly

"partnership management fee" of 10% of the gross revenues or $6,000,

whichever was greater. Exh. 200. The Partnership Agreement provided

that this "management fee will be considered an operating expense of the

Partnership." *Id*.

As general manager, Parker testified he had an active role in

---

[2] As of the petition date, the amount of Parker's equity account in Parrott was $205,326.38; his mother's equity account balance was $348,871; and Parker's brother's equity account balance was $205,326.38. Dkt. No. 257 at ¶ 7.

MEMORANDUM OF DECISION – 2

supervising the overall operations of the three radio stations owned by

Parrott in Hawaii.  Among other duties, Parker performed Federal

Communications Commission compliance work, managed employee

hiring and firing, and dealt with landlord and lease negotiations and

issues.  At one time, out of necessity, he assumed station manager

responsibilities for one of the radio stations when that position became

vacant, causing him to add personnel issues for the station, sales, and

format decisions to his list of tasks.  Parker testified that he typically

worked 40 to 60 hours per week as a general manager of Parrott, in

addition to the time spent as a station manager.  He was required to move

from Kona to Hilo, Hawaii, to work as the station manager.

It is undisputed that, as the manager of Parrott, Parker never paid

himself the management fee specified in the Partnership Agreement.  He

did receive reimbursement for certain business expenses he incurred,

including the cost to travel to Idaho to participate in chapter 11 hearings,

and for general office supplies.  Exh. Nos. 201-209.

When Parrott filed its chapter 11 petition on January 7, 2010, Parker

MEMORANDUM OF DECISION – 3

used $15,000 of his own funds to pay the retainer to Parrott's counsel. *See* Exhs. 211-212. He personally performed the administrative duties associated with the bankruptcy case. While he supervised their completion, and signed them on Parrott's behalf, Parker did not list himself as a creditor in Parrott's bankruptcy schedules. Dkt. No. 16. In addition, while the case was pending in chapter 11, Parker signed under penalty of perjury and submitted for filing eleven monthly operating reports, none of which disclosed that there were any amounts paid to him for his post-bankruptcy services, nor that the company was incurring an ongoing liability for his compensation earned but unpaid. Exh. Nos. 101-111. In addition, the Second Amended Disclosure Statement filed in the chapter 11 case, which Parker signed on behalf of Parrott, included a statement that Parker had voluntarily relinquished his right to receive a salary because there were no funds to pay it prepetition. Dkt. No. 96 at p. 21, ¶ 2. The chapter 11 plans signed by Parker and filed by Parrott also did not propose to pay Parker any back wages as part of Parrott's reorganization of its financial affairs. Dkt. Nos. 46, 95.

MEMORANDUM OF DECISION – 4

On February 10, 2011, Parrott's case was converted to one under chapter 7, and Gary L. Rainsdon ("Rainsdon") was appointed to serve as the trustee.  Dkt. Nos. 114-115.  On May 24, 2011, Parker filed a personal chapter 7 bankruptcy petition, and R. Sam Hopkins ("Hopkins") was ultimately appointed as the trustee in that case.  Case No. 11-40823, Dkt. No. 8.  In his personal bankruptcy schedules, Parker listed the unpaid wages and the unsecured loan to Parrott as assets on schedule B.  Exh. 214.

On June 13, 2011, Parker filed a proof of claim in Parrott's bankruptcy case.  Claims Reg. No. 34-1.  It claimed Parrott owed him a total of $135,000 in unpaid wages, and asserted a right to priority for $120,000 pursuant to § 507(a)(4).  *Id*.  The proof of claim was amended on January 11, 2012, to substitute Hopkins as the claimant in light of the filing of Parker's chapter 7 case.  Claims Reg. No. 34-2.

Rainsdon objected to the proof of claim as amended, arguing that Parker should not be entitled to claim any amounts due for the management fees because Parker and Parrott had never respected the terms of the Partnership Agreement giving rise to Parker's claims.   Dkt.

MEMORANDUM OF DECISION – 5

No. 219.  Rainsdon also pointed out that the amount claimed as a priority grossly exceeded the cap in § 507(a)(4).  *Id*.  Finally, Rainsdon argued that the claim for Parker's $15,000 "loan" to Parrott was not adequately documented.  *Id.*

Hopkins filed a response to Rainsdon's objection to the amended proof of claim.  Dkt. No. 228.  The response acknowledged that the priority portion of the claim would indeed be subject to the dollar limitation in § 507(a)(4), but insisted the claim should otherwise be allowed as filed.  *Id*. at 2.

On March 7, 2013, Hopkins upped the ante.  First, he amended the proof of claim yet again to now reflect a total claim in the amount of $495,000, with $10,950[3] of those amounts entitled to a priority claim under § 507(a)(4).  Claims Reg. No. 34-3.  The  total claim amount is comprised of $48,000 in unpaid wages Parker earned from April 1, 2008 – December 31, 2008; $72,000 in unpaid wages from January 1, 2009 – December 31, 2009;

---

[3]  The wage priority cap in § 507(a)(4) was amended, effective April 1, 2010, to $11,725.  However, the amendment was not retroactive, and thus does not apply here.

MEMORANDUM OF DECISION – 6

$15,000 for an unsecured loan by Parker to Parrott to pay the legal fees to Parrott's attorney; and $360,000 in statutory penalties on the unpaid wage claims pursuant to Idaho Code § 45-615(2). Claims Reg. No. 34-3.

In addition, on March 7, 2013, Hopkins filed a "Motion for Allowance of Chapter 11 Wage Claim" in which he sought chapter 11 administrative expense priority for $68,695.18 of the back wages, the difference between the $84,000.00 that Parker earned for management fees during the chapter 11 case, and the $15,304.82 he was paid by Parrott. Dkt. No. 229.

The parties stipulated that the hearing on Rainsdon's objection to the amended proof of claim, and on Hopkin's request for allowance of an administrative expense, be consolidated. Dkt. No. 253. The Court conducted the hearing on May 5, 2013, at which the parties appeared and offered evidence and testimony. *Id*.

### Conclusions of Law and Analysis

#### A. Generally

A timely filed proof of claim is deemed allowed, unless a party in

MEMORANDUM OF DECISION – 7

interest objects; the proof of claim constitutes prima facie evidence of the

validity and amount of the claim.  § 502(a); Rule 3001(f).  However, if an

objection to a proof of claim is made, the Court must determine the

amount of the claim as of the date of the petition, and "shall allow such

claim . . . except to the extent that—(1) such claim is unenforceable against

the debtor and property of the debtor, under any agreement or applicable

law for a reason other than because such claim is contingent or

unmatured."  § 502(b)(1).  As the objector, Rainsdon bears the burden to

overcome the prima facie validity of Hopkins' claim.  If he does so, then

the burden ultimately rests on Hopkins to demonstrate that the claim

should be allowed.  *In re Parrott Broadcasting Ltd. P'ship,* ___ B.R. ___, 2013

WL 1969314 *2 (Bankr. D. Idaho May 13, 2013) (citing *In re Schweizer,* 354

B.R. 272, 279–80 (Bankr. D. Idaho 2006)).

There are four components to Hopkins' amended proof of claim and

administrative expense motion:

> 1) A claim for wages Parker earned before Parrott filed its
> bankruptcy petition in the total amount of $120,000, which Hopkins
> asserts are entitled to a wage priority for $10,950 under § 507(a)(4);

MEMORANDUM OF DECISION – 8

2) A claim for Parker's wages earned during Parrott's chapter 11 case between January 7, 2010, the petition date, until the February 9, 2011, conversion date in the amount of $69,200[4], which Hopkins contends are entitled to administrative expense priority;

3) Statutory treble damages for both unpaid pre- and postpetition wages totaling $567,600; and

4) A claim for a prebankruptcy unsecured loan Parker made to Parrott for legal fees in the amount of $15,000.

The Court must determine if Parker is owed compensation and other amounts by Parrott. If so, the Court must decide the amounts due, when those debts were incurred, and whether Hopkins' claim is entitled to any priority of payment in the Parrott bankruptcy case.

B. *The Wage Claims*

The undisputed evidence presented at the hearing proves that Parker was indeed employed by Parrott. There is no question that he worked 40-60 hours per week as general manager of Parrott, and that

---

[4] This figure is an estimation. The amended proof of claim utilizes a $72,000 figure, but as Parker was paid some small sums, that figure is not correct. *See* Claims Reg. No. 34-3; Exhs. 201-209. The motion filed by Hopkins includes a $68,695.18 figure, Dkt. No. 229, but the post-hearing brief utilizes the $69,200 amount. This figure alters the treble damages amount claimed. However, given the Court's disposition of the issues, these differences are of no consequence.

MEMORANDUM OF DECISION – 9

during the course of the chapter 11 case, Parker took on the additional

responsibility of the station manager of one of the three radio stations then

being operated by Parrott.  Parker explained generally the nature of his

work for Parrott and as the station manager.  Evidence was also received

to support Parker's contention that the $6,000 per month he was supposed

to be paid under the Partnership Agreement was at or below industry

standards for compensation for persons performing similar duties.  Exh.

215.

Rainsdon, however, contends that Hopkins may not assert the

compensation claims because Parker either waived his right to receive

wages, or in the alternative, he should be judicially estopped from

claiming them.  Hopkins insists the claim should be allowed as filed.

### 1. *Judicial Estoppel*

Judicial estoppel "precludes a party from gaining an advantage by

taking one position, and then seeking a second advantage by taking an

incompatible position."  *In re Parker*, 471 B.R. 570, 576 (9th Cir. BAP 2012)

(quoting *Whaley v. Belleque*, 520 F.3d 997, 1002 (9th Cir. 2008)).  The

MEMORANDUM OF DECISION – 10

doctrine is an equitable one, invoked in the exercise of discretion by a

bankruptcy court.  *In re Parker*, 471 B.R. at 576 (quoting *New Hampshire v.*

*Maine,* 532 U.S. 742, 750 (2001)).

In this case, Rainsdon points out that the monthly operating reports,

filed by Parker on behalf of Parrott, continuously indicated no unpaid

wages were due to Parker, and that Parrott's balance sheet liabilities in

those reports did not increase as Parker's wages allegedly remained

unpaid.  Moreover, the chapter 11 plans Parker submitted for Parrott, as

well as disclosure statements filed to support those plans, likewise did not

reflect there were  wages owed to Parker.  Rainsdon argues that only when

the Parrott case was converted to chapter 7, did Parker assert his wage

claim.  He contends that Parker's prior filings on behalf of Parrott, which

do not disclose the increasing liability for unpaid wages, should estop

Parker from now asserting that wages were due and owing to him from

April 1, 2008 through the date of conversion.

In general, there are three elements for a court to consider in

evaluating whether to apply judicial estoppel against a party:  "(1)

MEMORANDUM OF DECISION – 11

whether a party's later position is 'clearly inconsistent' with its original position; (2) whether the party has successfully persuaded the court of the earlier position, and (3) whether allowing the inconsistent position would allow the party to 'derive an unfair advantage or impose an unfair detriment on the opposing party.'" *In re Parker*, 471 B.R. at 576 (quoting *United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008)).

Here, the first element, whether a party's later position is clearly inconsistent with its original position, is certainly met. Parker did nothing during the Parrott chapter 11 case to assert his wage claims, either individually, or as the responsible officer for Parrott. Parker filed no proof of claim; Parker is not listed as a creditor in Parrott's chapter 11 schedules; the disclosure statements do not disclose Parker's alleged claim; and none of Parrott's monthly operating reports authored by Parker reflect Parrott's increasing liability for Parker's unpaid wages. The chapter 11 plans that Parker helped craft for Parrott also do not propose to pay Parker any sums. Shortly after conversion of Parker's case to chapter 7, however, Parker filed a proof of claim for $135,000 in unpaid wages.

MEMORANDUM OF DECISION – 12

In the absence of some other justification, the Court can only infer

that Parker's decision to not disclose, but to conceal, his alleged

compensation claims in the many documents filed in the chapter 11 case

was to prevent that information from being used by others to thwart

Parrott's chapter 11 reorganization efforts.  Parker's decision to adopt that

strategy is clearly at odds with his subsequent attempts to share in

distributions with creditors in the Parrott case.  In other words, Parker's

positions to conceal his wage claim during the chapter 11 case, but to

assert that claim after conversion, are dramatically inconsistent.

However, the second element for application of judicial estoppel

focuses on whether Parker was successful in persuading the Court to

adopt his original position.  Here, there was no evidence presented to

show that the Court ever found that Parker was not owed wages as part of

the chapter 11 process.  Thus, the second element is not met.

It is likely that others directly connected with the Parrott case, *i.e.,*

perhaps existing or potential creditors, or the U.S. Trustee, may have relied

on Parker's incorrect information about the absence of a wage claim.

MEMORANDUM OF DECISION – 13

Parker testified that he excluded the unpaid wages from the monthly

operating reports because he was attempting to refinance the company

while it was in chapter 11, and he did not want his wage liabilities to

appear on the balance sheet.  Thus, it is evident that Parker intended

lenders to rely on his original position.  Additionally, Parker proposed two

disclosure statements and two chapter 11 plans, none of which revealed

unpaid wages, which he distributed to creditors and the U.S. Trustee.

Thus, Parker also intended for those parties to rely on that position.

Finally, Parker testified that he did not claim the unpaid wages on

Parrott's schedules in part to avoid unfavorable corresponding tax

consequences by the Internal Revenue Service, who also, presumably,

relied on that position.

        Even so, the doctrine at issue is that of *judicial* estoppel, and courts

must be careful to invoke that doctrine only to guard against the "risk of

inconsistent court determinations," by a court, thereby "protect[ing] the

integrity of the judicial process.'" *New Hampshire,* 532 U.S. at 749 (quoting

*United States v. C.I.T. Constr. Inc.,* 944 F.2d 253, 259 (5th Cir. 1991)).  As

MEMORANDUM OF DECISION – 14

noted above, Rainsdon has not shown how, if at all, the Court ever relied

upon the inaccuracies in the information filed by Parker in the chapter 11

case in any of its decisions made in this case.  In other words, while

Parker's positions were inconsistent, because the Court never adopted

Parker's original position that no wages were owed during the case,

despite others' likely reliance, there no basis to invoke judicial estoppel on

this record.

Moreover, even if all elements had been met, it is unlikely that

Hopkins should be equally estopped from asserting that Parker is owed

wages by Parrott.  Instead, the case law suggests that decisions made, and

positions taken, by individuals in their role as management for chapter 11

debtors-in-possession are not necessarily binding on others serving in

another capacity:

> It follows that a position taken by a trustee in
> litigation that is inconsistent with an earlier
> position taken by the debtor in litigation to which
> the trustee is not party, normally is not an
> inconsistency that warrants imposition of judicial
> estoppel.  In other words, it would be
> extraordinary for the trustee in the

MEMORANDUM OF DECISION – 15

> garden-variety bankruptcy to be estopped on
> account of something the debtor did for its own
> account during the case.

*In re An-Tze Cheng*, 308 B.R. 448, 455 (9th Cir. BAP 2004) *aff'd and remanded*

*sub nom*. *In re Cheng*, 160 F. App'x 644 (9th Cir. 2005).  The Bankruptcy

Appellate Panel continued:

> It is particularly difficult to justify estoppel when
> different capacities are involved.  Although that
> point may seem more palatable when one is
> speaking of not estopping the trustee/debtor in
> possession on account of an earlier inconsistent
> position taken by the debtor as debtor, the
> converse situation – not estopping the debtor for
> positions taken as debtor in possession – is
> equally valid.

*In re An-Tze Cheng*, 308 B.R. at 457.

The reluctance to apply judicial estoppel against a trustee based on

inconsistent positions previously taken by a debtor was also recently

endorsed in an unpublished decision from the District Court in *Craft v.*

*DeMeyer Furniture, Inc.*, Case No. 10-CV-230-BLW, Dkt. No. 26.  In that

case, Craft, the debtor, had filed a prebankruptcy complaint with the Idaho

Human Rights Commission ("IHRC").  Craft failed to list the pending

MEMORANDUM OF DECISION – 16

IHRC complaint in his schedules when he subsequently filed for bankruptcy relief.  After the bankruptcy case was closed,  Craft filed an action in the District Court containing nearly identical allegations as those included in the IHRC complaint.  The defendant in that action argued that Craft should be judicially estopped from asserting the claims based upon those allegations because Craft had not disclosed nor properly listed them in his bankruptcy schedules.

The District Court declined to apply judicial estoppel under those circumstances, holding that while Craft was precluded from pursuing claims he failed to disclose in his bankruptcy case for his own benefit, judicial estoppel did not "prevent either Craft or the bankruptcy trustee from pursuing Craft's claims *on behalf of the bankruptcy estate and for the sole benefit of the creditors." Id*. at p. 5 (emphasis in original).  The District Court's rationale, applying *In re An-Tze Cheng*, is that prohibiting the claim from being pursued on behalf of the bankruptcy estate would needlessly punish innocent creditors and possibly create a windfall for Craft.

The same rationale as adopted by the court in *Craft* is applicable

MEMORANDUM OF DECISION – 17

here, and thus the Court declines to apply the doctrine of judicial estoppel

to Hopkins, as the representative of Parker's creditors under these

circumstances.   In sum, under these facts, the Court concludes judicial

estoppel does not prohibit Hopkins' claims for Parker's unpaid wages.  To

do so would harm Parker's creditors.

   2. *Waiver*

   Rainsdon also argues that, under applicable state law, Parker's claim

against Parrott should be disallowed as unenforceable because Parker

waived his right to be paid a $6,000 monthly salary.  As Rainsdon notes:

> [t]he effect of Section 502(b)(1) is to make
> available to the trustee any defense to a claim that
> might have been available to the debtor.  For
> example, if a claim would be unenforceable
> against the debtor or against property of the
> debtor because, under applicable non-bankruptcy
> law, the debtor could raise a defense of usury,
> fraud, lack of consideration, unconscionability, or
> the expiration of the statute of limitations, such
> defense affords the trustee a basis for the
> disallowance of the claim in bankruptcy.  *In short,*
> *for the purposes of determining the allowability of a*
> *claim, the trustee is given the benefit of any defense*
> *available to the debtor of a personal nature which the*
> *debtor could have interposed, absent bankruptcy, in a*

MEMORANDUM OF DECISION – 18

*suit on the claim by the creditor*.

4 COLLIER ON BANKRUPTCY ¶ 502.03[2][b] (Alan N. Resnick & Henry J.

Sommer eds., 16th ed.) (emphasis added).  Put another way, while

Hopkins is not estopped from asserting Parker's wage claim, that claim is

subject to any defenses that could have been raised had Parker made the

claim against Parrott.  *Reed v. City of Arlington*, 650 F.3d 571, 575 (5th Cir.

2011).  These defenses are limited to "pre-petition defenses to a cause of

action that would have been applicable to a debtor if no bankruptcy case

had been filed."  *Id.*; *see also* § 558 (providing that "[t]he [bankruptcy]

estate shall have the benefit of any defense available to the debtor as

against any entity other than the estate . . . . ").  "[C]ourts are to evaluate

these defenses as they existed at the commencement of the bankruptcy."

*Reed*, 650 F.3d at 575.

In evaluating an objection to a creditor's claim under § 502(b)(1), the

validity of the claim must be determined under state law.  *In re Fitness*

*Holdings Intern., Inc.*, 714 F.3d 1141, 1148 (9th Cir. 2013).  Because Rainsdon

contends Parker waived his right to be paid according to the Partnership

MEMORANDUM OF DECISION – 19

Agreement by his own acts, the Court will apply state law to determine if

waiver has occurred.  As the Partnership Agreement specifies the laws of

the State of Hawaii will govern disputes arising from the document, and

because Parrott is a Hawaiian business entity, the Court concludes Hawaii

law controls.  *See* Exh. 200 at ¶ 114.

In Hawaii, the courts define a waiver as "an intentional

relinquishment of a known right, a voluntary relinquishment of rights, and

the relinquishment or refusal to use a right."  *Coon v. City & County of*

*Honolulu*, 47 P.3d 348, 376 (Haw. 2002).  The *Coon* court continued,

> To constitute a waiver, there must have existed a
> right claimed to have been waived and the
> waiving party must have had knowledge, actual
> or constructive, of the existence of such a right at
> the time of the purported waiver.  While the
> question whether a valid waiver exists is
> generally a question of fact, "when the facts are
> undisputed it may become a question of law."

*Id*. at 376-77 (internal citations omitted).  In addition,

> [w]aiver must be intentional.  Such intention may
> be indicated by language or conduct, may be
> either express or implied but does not necessarily
> imply that one has been misled to his prejudice or

MEMORANDUM OF DECISION – 20

> into an altered position.  Waiver depends upon
> the intention of the party who is charged with the
> waiver . . . .  It may be proven by an express
> declaration of the party charged with the waiver.
> *It may also be proved by the existence of acts or*
> *language so inconsistent with the purpose of the*
> *person charged to stand upon his rights as to leave no*
> *opportunity for a reasonable inference to the contrary.*

*Hewahewa v. Lalakea*, 35 Haw. 213, 218-19 (Haw. 1939) (emphasis added);

*see also Wilart Assocs. v. Kapiolani Plaza, Ltd.*, 766 P.2d 1207, 1210-11 (Haw.

App. 1988) (explaining that a waiver may be express or implied, and may

be established by an express agreement or statement, as well as by acts

and conduct from which an intention to waive may reasonably be

inferred).

### a.  The Prebankruptcy Wage Claim

Here, Rainsdon contends the evidence establishes that Parker

waived his right to claim unpaid wages in several ways.  First, it is

undisputed that Parker never received a regular salary from the date

Parrott was formed in 2007 forward.  As its general manager, Parker had

the authority to direct Parrott's operations, yet he never directed that the

MEMORANDUM OF DECISION – 21

salary be paid nor complained to the other owners about nonpayment.

While Parker was occasionally reimbursed for business expenses and some

travel costs, he was not paid a salary.

Additionally, Parker authored and filed disclosure statements

explaining the debts of Parrott which did not indicate he was owed any

funds for prepetition wages.  The Second Amended Disclosure Statement

provides, in the final paragraph:

> Partners of the debtor, Parrott Broadcasting
> Limited Partnership, have not received
> compensation.  Although the General Partner is
> entitled to receive a salary under the Limited
> Partnership Agreement of the debtor, the General
> Partner has not received a salary from the
> partnership.  *The forfeiture of this salary was*
> *voluntary on behalf of General Partner Scott Parker*
> *due to the financial difficulty the partnership*
> *encountered pre-petition.*[5]

Dkt. No. 96 at p. 21, ¶ 2 (emphasis added).   As can be seen, Parker clearly

knew of the salary terms in the Partnership Agreement, but intentionally

---

[5]  While these statements and omissions occurred postpetition, they
specifically concern his right to prepetition wages, and he testified about them in
the hearing on Rainsdon's objection to Hopkins' proof of claim, and
acknowledged he forfeited the wages.

MEMORANDUM OF DECISION – 22

decided to forego assertion of any claim for prebankruptcy wages during the chapter 11 case.

At the hearing, Parker testified that, not only was the money not available in Parrott to pay his salary, Parker elected to not assert any salary claim because of his attempts to restructure Parrott's debt, fearing that the outstanding wage liability would make the company look worse off financially to potential lenders. Moreover, Parker testified he did not include himself as a creditor in Parrott's bankruptcy schedules because his accountant informed him that such an act might have tax ramifications.

Parker knew of his rights to receive a salary but, through his specific acts and conduct, he refused to assert that right. Month after month, Parker executed and filed monthly operating reports under oath, perpetuating that refusal.

Parker's conduct indisputably establishes a waiver of his right to receive a prepetition salary. Moreover, because Hopkins stepped into Parker's shoes when his individual chapter 7 petition was filed, and because those same defenses applicable against Parker also apply against

MEMORANDUM OF DECISION – 23

Hopkins, the waiver of Parker's right to prepetition wages applies with

equal force to Hopkins' claim in Parrott's bankruptcy case.  As such, the

Court finds that the claim for prepetition wages is unenforceable under

§ 502(b)(1).

*b.  The Postpetition Wage Claim*

Hopkins claims that Parker's unpaid postpetition wages are entitled

to administrative expense status under §§ 364(a) (debt incurred in the

ordinary course of business) and/or 503(b)(1)(A) (actual and necessary

costs of preserving the estate.)  However, before the Court may consider

whether a claim is entitled to such status, it must first determine that a

valid claim exists.  It is at this point that Hopkins' claim fails.

This aspect of Parker's claim against Parrott also fails because of

waiver.  As discussed above, Parker, through his own actions during the

pendency of the chapter 11 case, waived any right he had to make a valid

claim for unpaid wages, and such waiver applies equally to both pre- and

postpetition claimed wages.  Parker's conduct, written statements, and

omissions not only easily satisfy the requirements for waiver under *Coon*

MEMORANDUM OF DECISION – 24

and *Hewahewa, supra*, but his testimony at the hearing established that he intentionally engaged in that conduct for his own purposes.  It was only after conversion to chapter 7 that he claimed he was due any wages at all.  Indeed, his actions are tantamount to a denial that he was ever owed a salary under the Partnership Agreement.

The Court concludes that Parker waived any claim to postpetition wages during the course of the chapter 11 case, and as Hopkins steps into Parker's shoes, he is likewise bound by that waiver.  Because Hopkins has not established a valid claim for unpaid wages in the first instance, there is no entitlement to administrative priority status.

Rainsdon's objection to Hopkins' proof of claim is sustained, and the claim will be disallowed.  Hopkins' request for the allowance of an administrative expense is denied.

C.  *The Unsecured Loan*

Finally, Hopkins asserts a claim for an unsecured loan in the amount of $15,000.  Recall, because Rainsdon objected to Hopkins' timely filed proof of claim, the Court must determine the amount of the claim as of the

MEMORANDUM OF DECISION – 25

date of the petition, and "shall allow such claim . . . except to the extent

that—(1) such claim is unenforceable against the debtor and property of

the debtor, under any agreement or applicable law for a reason other than

because such claim is contingent or unmatured." § 502(b)(1).

Additionally, once Rainsdon overcomes the prima facie validity of

Hopkins' claim, the burden ultimately rests on Hopkins to demonstrate

that the claim should be allowed.  *In re Parrott Broadcasting Ltd. P'ship*, ___

B.R. at ___, 2013 WL 1969314 at *2 (citing *In re Schweizer*, 354 B.R. at

279–80.)

Here, there is no documentation evidencing Parker's assertion that

he intended to make a loan to Parrott to retain its chapter 11 bankruptcy

counsel.  While it is undisputed Parker did indeed pay $15,000 of his own

funds to Parrott's counsel, Exh. 200, there is nothing in the record to

establish the nature and terms of that advance by Parker to Parrott.  The

Court is left to wonder whether the advance was a loan, which Parrott

would be legally obligated to repay, or was the money given by Parker to

Parrott to protect his equity interest in the company as a capital

MEMORANDUM OF DECISION – 26

contribution or a gift?  While a loan would give rise to a claim in Parrott's

bankruptcy case, if the advance was a gift or capital contribution, Parker

must rely upon his equity interest in the defunct company for any return.

The sole evidence that a loan was intended was Parker's own

testimony.  Under Hawaii law, "[i]t is a fundamental principle of law that

there must be mutual assent or a meeting of the minds on all essential

elements or terms in order to form a binding contract." *Carson v. Saito*, 489

P.2d 636, 638 (Haw. 1971) (quoting *Honolulu Rapid Transit v. Paschoal*, 449

P.2d 123, 127 (1968)); *Inamed Corp. v. Kuzmak*, 275 F.Supp.2d 1100, 1120

(C.D. Cal. 2002) ("If an essential element of the promise is reserved for

future agreement, there is no binding contract until the open point is

resolved.").[6]  Similar requirements attend the formation of oral contracts.

*See Douglass v. Pflueger Hawaii, Inc.,* 135 P.3d 129, 134 (Haw. 2006) ("in

order for an oral contract to be enforceable, there must be an offer, an

acceptance, and consideration."); *Boteilho v. Boteilho*, 564 P.2d 144, 146

---

[6]  Although based on California law, *Inamed Corp.* was cited by the Hawaii
Appellate Court in *Roaring Lion, LLC v. Exclusive Resorts PBL1, LLC*, 2013 WL
1759005 *3 (Haw. App. April 24, 2013).

MEMORANDUM OF DECISION – 27

(1977) ("To be enforceable[,] a contract must be certain and definite as to

its essential terms.").  Finally, the Hawaii statute of frauds requires that all

contracts not to be performed within one year, to be enforceable, must be

evidence by a writing.  HRS § 656-1.[7]

As the transaction here occurred before the Parrott bankruptcy was

filed, Parker and Parrott would have had to mutually agree that the

transaction was a loan in order to create an enforceable obligation under

the requirements of Hawaii contract law.  Hopkins offered no evidence to

establish the essential terms of the alleged loan transaction; there was no

proof regarding the repayment terms, interest rate, due date, or the like.

---

[7] The statute provides, in pertinent part:
> No action shall be brought and maintained in any of
> the following cases:
> * * * * *
>> (5) Upon any agreement that is not to be
>> performed within one year from the making
>> thereof;
> unless the promise, contract, or agreement, upon
> which the action is brought, or some memorandum or
> note thereof, is in writing, and is signed by the party
> to be charged therewith, or by some person thereunto
> by the party in writing lawfully authorized. . . .

MEMORANDUM OF DECISION – 28

Moreover, the existence of this loan was never disclosed in any of the

Parrott bankruptcy documents that Parker authored where it should have

been disclosed.  In this context, without corroborating evidence, Parker's

testimony is not credible, and the Court is not persuaded that the $15,000

given by Parker to Parrott was a loan.  Because Hopkins failed to carry the

burden of proof, the Court concludes that aspect of the claim may not be

allowed in Parrott's bankruptcy case.

### Conclusion

While Hopkins is not judicially estopped from asserting the claim

for unpaid wages in the Parrott bankruptcy case, the Court concludes that

Parker waived his right to be paid both pre- and postpetition wages.

Therefore, Hopkins has no valid claim for such wages, and no

corresponding right to allowance of an administrative expense.

Accordingly, Rainsdon's objection to Hopkins' proof of claim is sustained,

the claim will be disallowed, and the motion for allowance of an

administrative expense will be denied.

MEMORANDUM OF DECISION – 29

A separate order will be entered.

Dated:  June 26, 2013

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 30