# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

_____

In Re:

PARROTT BROADCASTING          Bankruptcy Case
LIMITED PARTNERSHIP,          No. 10-40017-JDP

                    Debtor.

_____

## MEMORANDUM OF DECISION

_____

**Appearances:**

Daniel C. Green and Brett R. Cahoon, RACINE OLSON NYE
BUDGE & BAILEY, Pocatello, Idaho, for chapter 7 trustee Gary L.
Rainsdon.

Steven Taggart, MAYNES TAGGART, PLLC, Idaho Falls, Idaho, for
chapter 7 trustee R. Sam Hopkins.

### *Introduction*

In this case, the Court is again asked to referee what amounts to a

MEMORANDUM OF DECISION – 1

"trustee vs. trustee" contest.[1]  Following an August 23, 2013 hearing, and

the submission of briefs, the issues were taken under advisement.  This

Memorandum disposes of the pending motions.  Fed. R. Bankr. P. 7052;

9014.[2]

### *Facts*[3]

In 2007, Scott Daryl Parker ("Parker"),  along with his mother and

brother, formed Parrott Broadcasting, L.P. ("Parrott"), each investing

significant sums into the new venture intended to acquire and operate

several radio stations.  Parker served as Parrott's general manager, which,

according to the Limited Partnership Agreement ("Partnership

---

[1] Of course, such battles are inherently inefficient and expensive; two separate bankruptcy estates, and their creditors, risk the cost and delay incident to the litigation.  Indeed, this approach to settling inter-estate issues in bankruptcy cases can be hard to square with the trustees' duty under § 704(a)(1) to administer the respective estates "as expeditiously as is compatible with the best interests of parties in interest . . . ."

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[3] Some of these facts are taken from the Court's prior decision in this case, discussed below, entered on June 26, 2013.  Dkt. No. 261.

MEMORANDUM OF DECISION – 2

Agreement") executed by the partners, entitled him to receive a monthly "partnership management fee" of 10% of the business gross revenues, or $6,000, whichever sum was greater. Parker was never paid according to the Partnership Agreement despite providing his services to Parrott.

Parrott filed a chapter 11 petition on January 7, 2010. Parker used $15,000 of his own money to fund the retainer to Parrott's counsel. While he was the responsible officer for Parrott in the bankruptcy case, and signed all of the bankruptcy papers submitted on its behalf in the case, Parker did not list himself as a creditor in Parrott's bankruptcy schedules, nor did any of Parrott's chapter 11 monthly operating reports filed during the case, which Parker signed as true and correct, disclose any amounts owed to Parker for wages. Parrott's disclosure statement and proposed chapter 11 plans, signed by Parker and filed in the case, also did not propose to pay Parker any back wages as part of Parrott's reorganization of its financial affairs and on-going operations.

On February 10, 2011, Parrott's case was converted to a chapter 7 case, and Gary L. Rainsdon ("Rainsdon") was appointed to serve as the

MEMORANDUM OF DECISION – 3

trustee.  Then, on May 24, 2011, Parker filed a personal chapter 7

bankruptcy case, Case No. 11-40823-JDP, and R. Sam Hopkins

("Hopkins") was ultimately appointed as the trustee in that case.  In his

personal bankruptcy schedules, Parker for the first time listed the unpaid

wages owed to him, and the alleged unsecured loan he made to Parrott for

the retainer, as potential assets.

Though he had already filed his own bankruptcy petition, on June

13, 2011, Parker filed a proof of claim in Parrott's bankruptcy case.  Claims

Reg. No. 34-1.  It alleged Parrott owed him $135,000 in unpaid wages, and

that a substantial portion of that amount was entitled to a wage-claim

priority in payment under § 507(a)(4).  *Id*.  The proof of claim was

amended on January 11, 2012, to substitute Hopkins as the claimant in

light of the filing of Parker's chapter 7 case.  Claims Reg. No. 34-2.

Rainsdon objected to the Parker/Hopkins proof of claim as

amended, arguing, *inter alia*, that Parker should not be entitled to recover

any amounts due for management fees because Parker and Parrott had

never respected the terms of the Partnership Agreement giving rise to

MEMORANDUM OF DECISION – 4

Parker's claims.  Dkt. No. 219.  Rainsdon also argued that the claim for

Parker's $15,000 "loan" to Parrott was not adequately documented.  *Id.*

On March 7, 2013, Hopkins amended the proof of claim yet again,

this time to increase the total claim to $495,000, with $10,950 entitled to

priority under § 507(a)(4).  Claims Reg. No. 34-3.  After an evidentiary

hearing on Rainsdon's objection to this second amended Parker/Hopkins

proof of claim, the Court entered a Memorandum Decision, and a

corresponding Order, determining that Parker, under applicable

nonbankruptcy law, had waived his right to be paid both pre- and

postpetition wages, and thus had no valid claim in Parrott's bankruptcy

case.  Dkt. Nos. 261 and 262.

Undeterred, on July 8, 2013, Hopkins filed a Motion for Relief from

Stay and for Rule 3008 Reconsideration of Denial of Claim.  Dkt. No. 264.

Rainsdon objected to the motion, and the Court heard argument on

August 20, 2013.  After the parties submitted briefs, Dkt. Nos. 272 and 273,

the motions were deemed under advisement.

MEMORANDUM OF DECISION – 5

*Analysis and Disposition*

In the motion, Hopkins argues that the automatic stay in the Parrott case should be modified so that he may commence an adversary proceeding in the Parker case against Rainsdon/Parrott to establish that Parker's waiver of his rights as a creditor constitutes an avoidable transfer, thereby creating a claim in favor of Hopkins in the Parrott case. Based upon this alleged avoidance claim, Hopkins seeks reconsideration of the Court's order disallowing his claim in the Parrott case.

Rainsdon argues that Hopkins' new claim is simply too late. He also contends that any avoidance claim to be asserted by Hopkins would be barred by the applicable statute of limitations, and thus does not constitute a colorable claim.

Rainsdon's arguments are both correct. Hopkins' motion lacks merit and will be denied.

1. <u>Motion for Stay Relief</u>

The Code authorizes the Court to grant stay relief in favor of a party "for cause." § 362(d)(1). Here, Hopkins seeks relief from the stay to pursue

MEMORANDUM OF DECISION – 6

an avoidance action in the Parker case against Rainsdon/Parrott under

§§ 548(a)(1)(B), 544(b), 550(a)(1) and Idaho Code § 55-913(b), alleging that

Parrott effectively received fraudulent transfers when Parker waived his

"right" to both unpaid wages and to repayment of the retainer loan.  Dkt.

No. 264-1.[4]  The Court will decline Hopkins' request.

A bankruptcy court exercises discretion in deciding whether to

grant relief from the automatic stay.  *Groshong v. Sapp (In re Mila, Inc.)*, 423

B.R. 537, 542 (9th Cir. BAP 2010); *In re Franck*, 171 B.R. 893, 895 (Bankr. D.

Idaho 1994).  In resolving Hopkins' stay relief motion, and while the merits

are clearly debatable,[5] the Court need not at this juncture consider whether

Hopkins can prove the elements of his novel avoidance claim against

---

[4]  Given his efforts to disprove it in the prior claim litigation, it is remarkable that, apparently, Hopkins now embraces the Court's decision concluding that Parker waived his right to the unpaid wages and retainer payment.

[5]  Hopkins may struggle to prove that Parker's deliberate decision to forego payments from Parrott to buck up the cash-strapped family-owned business constituted a "transfer," or that he received "less than a reasonably equivalent value in exchange for such transfer."  *See* § 101(54); § 548(a)(1)(B). Since he was the company's manager and one of its owners, his exercise of judgment in electing not to take a salary or loan reimbursement may well have been necessary to the continued viability of his investment in the business.

MEMORANDUM OF DECISION – 7

Rainsdon/Parrott.  Rather, the Court need only find that Hopkins asserts a

"colorable" avoidance claim in order to support a grant of stay relief.  *In re*

*Edwards*, 454 B.R. 100, 105 (9th Cir. BAP 2011) (stating, "a party seeking

stay relief need only establish that it has a colorable claim to enforce a right

against property of the estate.") (quoting *Veal v. Am. Home Mort. Serv., Inc.*

*(In re Veal)*, 450 B.R. 897, 914-15 (9th Cir. BAP 2011)); *United States v. Gould*

*(In re Gould)*, 401 B.R. 415, 425 n.14 (9th Cir. BAP 2009).  A "colorable

claim" is one "that is legitimate and that may reasonably be asserted,

given the facts presented and the current law (or a reasonable and logical

extension or modification of the current law.)"  BLACK'S LAW DICTIONARY

282 (9th ed. 2009).  A colorable claim is not "wholly insubstantial,

immaterial, or frivolous."  *McBride Cotton & Cattle Corp. v. Veneman*, 290

F.3d 973, 981 (9th Cir. 2002).

    *A.  Colorable Claim and the Statute of Limitations*

    The Code provides that any action to avoid a fraudulent transfer

under under §§ 544(b) or 548(a):

    may not be commenced after the earlier of:

MEMORANDUM OF DECISION – 8

(1) the later of —

    (A) 2 years after the entry of the
order for relief; or
    (B) 1 year after the appointment or
election of the first trustee . . . if such
appointment or such election occurs
before the expiration of the period
specified in subparagraph (A); or

(2) the time the case is closed or dismissed.

§ 546(a).

Rainsdon points out that when Parker filed his individual

bankruptcy petition on May 24, 2011, it constituted an order for relief,[6] and

therefore, the § 546(a) statute of limitations for filing any §§ 544 or 548

actions expired in his case on May 24, 2013.  He further argues that

because neither this stay relief motion, nor any adversary complaint, was

filed by Hopkins before that date, the statute of limitations would bar an

avoidance action.  Thus, Rainsdon concludes, Hopkins has not shown he

holds a colorable avoidance claim, nor established "cause" for stay relief in

─────────────────

    [6] Section 301(b) provides that the "commencement of a voluntary case
under a chapter of this title constitutes an order for relief under such chapter."

MEMORANDUM OF DECISION – 9

the Parrott case.

Hopkins disagrees.  He argues that through operation of the "relation back" doctrine in Civil Rule 15(c)(2), made applicable to adversary proceedings via Rule 7015, this stay relief motion and his eventual adversary proceeding against Rainsdon, would be timely.

B.  *The Relation Back Doctrine*

To refute Rainsdon's argument that his avoidance claim would be time-barred, Hopkins relies upon the "relation back" doctrine embodied in Civil Rule 15(c), which provides, in relevant part:

> **(1) When an Amendment Relates Back**.  An amendment to a pleading relates back to the date of the original pleading when:
>> * * * * *
>> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading[.]

Civil Rule 15(c) (emphasis in original).

Hopkins argues that because Rainsdon was aware of the facts giving rise to Hopkins' avoidance claim against him, an adversary complaint to

MEMORANDUM OF DECISION – 10

avoid the alleged fraudulent transfers would be timely despite no such

action having been commenced before the deadline in § 546(a).  In

particular, Hopkins notes that he filed Amended Proof of Claim No. 34 in

the Parrott case on May 3, 2012, in which he claimed Parker was owed

wages for services provided to Parrott.  In addition, on May 24, 2013, the

bar date Rainsdon cites for purposes of § 546(a), Hopkins filed a Post-

Hearing Brief, Dkt. No. 258, in which he states that §§ 547, 548, and 549

collectively "give [Hopkins] the power to set aside preferential, fraudulent

and post-petition transfers," and that as a result, Hopkins should not be

constrained by any of Parker's alleged bad behavior in completely failing

to disclose his creditor claims against Parrott up to that time.  Dkt. Nos.

258 and 268.  Hopkins claims that because Parker's services went unpaid

in Parrott's bankruptcy case, of which, as its officer, Parker was of course

aware, and based upon which he and Hopkins eventually filed the proofs

of claim, together with the Post-Hearing Brief statement, Rainsdon was

charged with notice that Parker's bankruptcy case trustee held a possible

avoidance action.  Using this somewhat complicated logic, Hopkins asserts

MEMORANDUM OF DECISION – 11

the relation back doctrine saves his otherwise time-barred avoidance

action.

The Court declines to travel Hopkins' twisted route to reach his

desired conclusion.  Under § 546(a), the statute of limitations for Hopkins

to file a §§ 544 or 548 action expired on May 24, 2013.  Even assuming

without deciding that Hopkins' Post-Hearing Brief filed in this case on

May 24, 2013 would qualify as a "pleading" for purposes of Civil Rule

15(c)[7], the Court rejects Hopkins' contention that an as-of-yet unfiled

adversary complaint against Rainsdon would relate back to the time of the

---

[7]  According to the language of Civil Rule 15(c), relation back governs *amendments* to *pleadings*, such that there must first be a pleading to which a later filing may relate back.  In other words, for his argument to make sense, Hopkins' Post-Hearing Brief must constitute a pleading in order to permit the proposed adversary complaint to relate back to it.  Civil Rule 7(a) does not include a brief among those documents listed as "pleadings."  Civil Rule 8(a), in turn, sets the general rules for pleadings stating a claim for relief, and requires: 1) a jurisdictional statement; 2) "a short and plain statement of the claim showing that the pleader is entitled to relief;" and 3) a demand for the relief sought.  Rule 7008 adds three more requirements: 1) information about the name, number and chapter of the case as well as the district and division where the case is pending; 2) a statement about whether the proceeding is core or non-core; and 3) a statement of whether the pleader consents to entry of final orders or judgment by the bankruptcy court or not.  *See Classic Auto Refinishing, Inc. v. Marino (In re Marino)*, 37 F.3d 1254 (9th Cir. 1994).

MEMORANDUM OF DECISION – 12

filing of the Post-Trial Brief.

This is a not a situation where a plaintiff seeks to amend a pleading filed earlier in a pending civil action against the defendant. The context in which Hopkins' brief with its reference to a possible avoidance claim was filed was in the Parrott claims litigation, not an adversary proceeding in the Parker case. Moreover, the cryptic statement in Hopkins' brief was made to advance his argument that the common law doctrine of judicial estoppel did not apply to Parker's failure to disclose his creditor claims in the many bankruptcy pleadings he signed and filed in the Parrott case. In particular, Hopkins was arguing that prior statements made by Parker, and through him, Parrott, were not inconsistent with those being made by Hopkins as trustee. The paragraphs in the brief in which the relevant statement was made are as follows:

> In a bankruptcy context, the trustee's rights are not identical with or circumscribed by the conduct of debtor. For instance, under Section 544, the trustee has the rights of a creditor with a judicial lien, an unsatisfied judgment, a bona fide purchaser and the equivalent powers of the debtor's unsecured creditors. Sections 547, 548

MEMORANDUM OF DECISION – 13

> and 549 give the trustee the power to set aside
> preferential, fraudulent and post-petition
> transfers.  All are rights not given to Mr. Parker,
> the chapter 7 debtor.
>
> Given the trustees' unique role, there is
> substantial authority for the proposition that
> trustees should not be constrained by bad
> behavior, or allegedly bad behavior of debtors.

Dkt. No. 258 at 15.

Despite the fact that Rule 15(c)(1)(B) is broadly drafted and

construed,[8] Hopkins' statement in the brief is very likely insufficient to

satisfy its requirements for relation-back.  The Ninth Circuit has stated that

a trial court should "permit relation-back if the new claim arises from the

same 'conduct, transaction, or occurrence' as the original claim." *Markus v.*

*Gschwend (In re Markus)*, 313 F.3d 1146, 1150 (9th Cir. 2002) (quoting

*Dominguez v. Miller (In re Dominguez)*, 51 F.3d 1502, 1510 (9th Cir. 1995)).  A

court may find such a link when "the claim to be added will likely be

proved by the 'same kind of evidence' offered in support of the original

---

[8] Indeed, relation back has been held to be proper even where the original complaint failed for lack of subject matter jurisdiction. *See Stewart v. United States*, 620 F.2d 740 (9th Cir. 1980) (per curiam).

MEMORANDUM OF DECISION – 14

pleadings." *In re Dominguez*, 51 F.3d at 1150 (quoting *Rural Fire Prot. Co. v. Hepp*, 366 F.2d 355, 362 (9th Cir. 1966)).  This approach is justified because, if a party is already in court defending a claim arising out of a particular set of facts, it will not be prejudiced if another claim arising out of the same facts is later added.  Put another way, "[t]here is no reason to apply a statute of limitations when . . . the respondent has had notice from the beginning that petitioner was trying to enforce a claim against it because of the [particular facts]." *Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 738-39 (9th Cir. 1982) (quoting *Tiller v. Atlantic Coast Line RR*, 323 U.S. 574, 581 (1945)).  If the factual situation out of which the action arises remains the same and has been brought to the party's attention, a change in legal theory on which the action is prosecuted is of no consequence. *Id*. at 739 (citing *Tiller,* 323 U.S. at 581).

In this case, Hopkins apparently views the relevant factual situation as simply that Parker is owed money from Parrott's estate, and Hopkins now seeks such payment, albeit via a different legal theory, and thus he contends the relation back doctrine applies.  However, while those general

MEMORANDUM OF DECISION – 15

facts are in common, the facts to support an avoidance claim were not implicated in the claims litigation.

Hopkins initially argued Parker was owed wages for services he performed for Parrott for which he was not paid as provided in the Partnership Agreement. His current "relation back" argument is that Parker's waiver of his right to receive wages for his work for Parrott constitutes a "transfer" avoidable by Hopkins as a chapter 7 trustee. While the factual predicate starts at roughly the same point – Parker worked for Parrott and was entitled to wages – his theories of recovery diverge sharply. Hopkins can not rely on the same kind of evidence to support each of his theories. The evidence in the proof of claim litigation was that Parker worked for Parrott, and the Partnership Agreement entitled him to wages which he was not paid. Therefore, he should be allowed a claim in Parrott's bankruptcy case. The avoidance claim starts with the same proof, *i.e.*, that Parker worked for Parrott and was owed wages which he did not receive. However, to prove the avoidance claim as alleged here, Hopkins also had to prove that Parker waived his right to receive those wages, that

MEMORANDUM OF DECISION – 16

such waiver constituted a transfer, and that the additional elements of §§ 544, 548, 550, and Idaho Code § 55-913(b) were met.  To do so, many additional facts would have to be established.  That the Court found some of those facts in the course of deciding the objection to Hopkins' proof of claim does not aid him here.

At bottom, Hopkins seeks to parlay one sentence in a post-hearing brief opposing Rainsdon's objection to his proof of claim into an avoidance complaint.  As noted above, while a change in theory is permissible under Civil Rule 15(c), this is more than a changed theory.  Indeed, here, while Hopkins initially sought to enforce Parker's right to collect from Parrott, he now seeks to exercise his trustee powers to avoid an action taken by Parker.  Hopkins has not persuaded the Court that Civil Rule 15(c) would apply in this instance.

2.  Motion for Reconsideration.

The Code provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause.  A reconsidered claim may be allowed or disallowed according to the equities of the case." § 502(j).  Rule

MEMORANDUM OF DECISION – 17

3008 is the mechanism by which such a motion is brought, although it is

silent regarding the standard to be employed in deciding such a motion.  It

provides:

> A party in interest may move for reconsideration
> of an order allowing or disallowing a claim
> against the estate.  The court after a hearing on
> notice shall enter an appropriate order.

Rule 3008.

When a Rule 3008 motion is filed within fourteen days of the entry

of the order disallowing a claim, as it was here,[9] the motion is analogous to

a motion for a new trial or to alter or amend the judgment, and is thus

subject to the considerations of Civil Rule 59, made applicable in

bankruptcy cases via Rule 9023.  *See In re Wylie*, 349 B.R. 204, 209 (9th Cir.

BAP 2006).  As such, a motion under Civil Rule 59 "may seek a

reconsideration of the correctness and merits of the trial court's underlying

judgment."  *In re Wylie*, 349 B.R. at 209.  Thus, the Court could reconsider

---

[9] The Memorandum Decision and Order were entered on June 26, 2013; Hopkins' reconsideration motion was filed twelve days later, on July 8, 2013. Dkt. Nos. 261, 262 and 264.

MEMORANDUM OF DECISION – 18

whether its decision to disallow Hopkins' claim was correct.  Nevertheless,

while Rule 3008 should be "liberally exercised," *In re Shaw*, 85 IBCR 233,

233 (Bankr. D. Idaho 1985), such reconsideration is not warranted here.

Hopkins seeks reconsideration of the Court's Memorandum

Decision and Order, dated June 26, 2013.  To be clear, however, Hopkins'

motion does not ask the Court to reconsider its conclusion that Parker

waived his claim to wages.  Instead, Hopkins now embraces the waiver,

and seeks reconsideration of the prior decision "to the extent it bars lifting

the stay and pursuing an adversary proceeding" based on the trustee's

avoidance powers under §§ 544 and/or 548.  *See* Dkt. Nos. 268 and 264.  For

the reasons explained above, Hopkins' proposal to pursue an adversary

proceeding against Rainsdon and the Parrott estate seems futile, or at best,

a long, expensive contest.  All things considered, in the exercise of its

discretion, the Court will deny Hopkins' request for reconsideration.

Hopkins' reconsideration motion is a request to allow him to, yet

again, amend his prior proof of claim, which the Court disallowed, or to

MEMORANDUM OF DECISION – 19

assert a totally new claim, after the bar date.[10]  Whether to allow an

amendment to a claim is within the bankruptcy court's discretion.  *Venhaus*

*v. Wilson (In re Wilson)*, 96 B.R. 257, 262 (9th Cir. BAP 1988).  There is a

long-standing policy of liberally permitting amendments to proofs of

claim.  *In re Roberts Farms, Inc.*, 980 F.2d 1248, 1251 (9th Cir. 1992).

However, even if an amendment arises out of the same transaction as gave

rise to the original claim, "[t]he crucial inquiry is whether the opposing

party would be unduly prejudiced by the amendment."  *Id. at* 1251 (citing

*In re Wilson*, 96 B.R. at 263; *United States v. Hougham*, 364 U.S. 310, 316

(1960)).

      To aid the Court in its analysis, it should consider certain factors to

determine whether undue prejudice will result from a late amendment to a

---

[10]  After conversion of the Parrott case to chapter 7, the deadline for filing
claims was June 13, 2011.  Dkt. No. 121; *see also* Rule 3002(c).  While Parker's
original proof of claim was timely filed, and as such the subsequent amendments
to it arguably relate back to that date, courts "must subject post bar date
amendments to careful scrutiny to assure that there was no attempt to file a new
claim under the guise of amendment."  *United States v. Int'l Horizons, Inc. (In re
Int'l Horizons, Inc.)*, 751 F.2d 1213, 1216-17 (11th Cir. 1985); *In re Grivas*, 123 B.R.
876, 878 (Bankr. S.D.Cal. 1991).

MEMORANDUM OF DECISION – 20

claim, such as "bad faith or unreasonable delay in filing the amendment,

impact on other claimants, reliance by the debtor or other creditors, and

change of the debtor's position." *In re JSJF Corp.*, 344 B.R. 94, 102 (9th Cir.

BAP 2006) (citing *In re Wilson*, 96 B.R. at 262). Applying these factors in

this case, it is apparent that prejudice will result if Hopkins is allowed to

again amend his claim.

As recounted above, at this late date, Hopkins seeks not just to

change the amount of his claim, but to change his legal theory completely.

The claims bar date in Parrott's chapter 7 case was June 13, 2011. Hopkins'

motion was filed on July 8, 2013, more than two years later. And while

Hopkins would contend that he did not know that the Court would find

that Parker had waived his right to receive wages and a loan payment

until the Memorandum Decision was issued on June 26, 2013, the fact is,

Hopkins knew the Partnership Agreement entitled Parker to wages from

Parrott, and that Parker had advanced funds to pay Parrott's attorney, and

he knew those obligations had not been paid. While the Court's decision

made it clear, given Parker's actions in the Parrott chapter 11 case,

MEMORANDUM OF DECISION – 21

Hopkins could have surmised that Rainsdon may argue waiver in response to Parker's claims, and he could have initiated his proposed avoidance action at that time. Instead, he waited until after the claims litigation had concluded, and he lost, to attempt the amendment. Not only is this unreasonable delay, but the expense to creditors, many of which are creditors in both the Parker and Parrott bankruptcy cases, is multiplied. To now permit the amendment of Hopkins' proof of claim, and the avoidance litigation to follow, would compound that expense and unduly prejudice creditors in the payment of their claims.

After considering the relevant factors, the Court concludes that prejudice would result if Hopkins were permitted to again amend his proof of claim at this late date.

### Conclusion

Any action Hopkins wishes to pursue against Rainsdon and the Parrott estate is likely untimely. As such, Hopkins has not shown good cause to grant him relief from the stay in which to commence and prosecute an adversary proceeding. Moreover, as Hopkins does not seek

MEMORANDUM OF DECISION – 22

to have the Court change its prior decision, and amendment of the prior

proof of claim would be prejudicial, the Court will deny Hopkins' motion

in a separate order.

Dated:  October 15, 2013

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 23